UNITED STATES of America

v.

Ian Moses ASHLEY, Appellant.

No. 91–3273.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 7, 1993.

Decided Oct. 21, 1994.

Richard Seligman, Washington, DC, appointed by the Court, argued the cause and filed the brief for appellant.

D. Shane Read, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. On the brief were John R. Fisher, Thomas C. Black, Peggy Kuo and Mary B. Murphy, Asst. U.S. Attys., Washington, DC.

Before: WALD and SILBERMAN, Circuit Judges.*

Opinion for the Court filed by Circuit Judge WALD.

---

* *Chief Judge* MIKVA, a member of the panel when the case was originally argued, took no part in its final disposition.

WALD, Circuit Judge:

In 1991, Detective Ronald Hairston ("Hairston") of the Metropolitan Police Department observed Ian Moses Ashley ("Ashley") disembark from a bus in Washington, D.C. Hairston obtained Ashley's consent to search his person for drugs, and recovered a brown paper bag containing a "rock-like" substance from Ashley's underwear. Ashley was arrested, tried, and convicted of possession of crack cocaine with intent to distribute. He appealed to this court.

In a memorandum filed September 17, 1993, we noted that three relevant cases had been decided since Ashley's conviction. First, the Supreme Court established an "objective reasonableness" standard for measuring the scope of a suspect's consent under the Fourth Amendment. *Florida v. Jimeno,* 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). Second, this court held that a suspect's "objectively reasonable" consent to a body search indicates consent to a "traditional frisk search," including a "sweeping motion" over the outer garments of the crotch area. *United States v. Rodney,* 956 F.2d 295 (D.C.Cir.1992). Third, the Supreme Court found that if an officer discovers, during a pat-down search of the outer garments, an object "whose contour or mass" makes it readily identifiable as contraband, its seizure is justified. *Minnesota v. Dickerson,* — U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). We remanded to the district court for clarification of its factual findings and legal conclusions regarding the permissibility of the search in light of these cases. 6 F.3d 829.

On remand, the district court conducted a lengthy evidentiary hearing and made the following detailed findings:

1) When Ashley got off the Greyhound bus, Hairston saw Ashley and followed him through the bus station to the street outside.

2) Hairston, in plain clothes, approached Ashley, identified himself as a police officer and asked if he could speak with him. Ashley responded in the affirmative. Hairston asked Ashley where he was going in the District. Ashley removed a small address book from a pocket and gave an address on Rock Creek Church Road.

3) Hairston, after explaining to Ashley that the city has a problem with drugs being brought into the city from other locations by bus, asked if Ashley was carrying drugs on his person, to which Ashley said, "No," and raised his hands above his head and said "Do you want to search me?" Hairston replied "Yes. May I search you?" and Ashley again said "Yes" and raised him (sic) arms. Detective Hairston then told Ashley that he could lower his arms.

4) Detective Hairston began by searching Ashley's coat, coat pockets, and sleeves. Hairston proceeded to Ashley's waist, from which he proceeded to pat down each pant leg. Hairston then examined the area of Ashley's outer pant's pockets, from the groin area to the upper thigh. Hairston checked the inside of the pant's pockets for weapons. The exterior search of the groin to upper thigh area (the crotch area) was conducted in a sweeping patting, probing motion using the flat surface of Hairston's hands from the end of the palm to the tips of the fingers.

5) During the exterior search of Ashley's crotch, Detective Hairston felt a hard object underneath Ashley's pants. From the object's feel, based upon Detective Hairston's extensive knowledge concerning the packaging and transportation of drugs, Detective Hairston believed that it was narcotics. Prior to this search in 1991, Detective Hairston had recovered drugs from the crotch area of suspects between 10–15 times. Detective Hairston was aware that often drug couriers attempt to hide drugs in their underwear.

6) Feeling the hard rock substance from outside his pants, Detective Hairston then asked Ashley to open his pants. Ashley did so. Hairston then noticed that Ashley had on a second pair of dress pants. Hairston opened the second pair of pants. Hairston then removed the hard object, a small portion of which was sticking up from his underwear. Upon removal, Detective Hairston discovered that the object he found was a brown paper bag contain-

ing a plastic bag filled with crack cocaine. The bag was approximately 4–5 inches long, with ¼ to ½ inch sticking out of the top of Ashley's underwear, prior to its being removed. Detective Hairston did not touch Ashley's genitals while removing the cocaine from his underwear.

*United States v. Ashley*, No. 91–93 at 2–3 (D.D.C. May 24, 1994) (district court's findings of fact and conclusions of law) ("Findings"). The district court concluded that within the scope of a consensual search, "the experienced detective was able to perceive and identify narcotics...." *Id.* at 3. Once he had done so, "he had probable cause to detain the defendant and seize contraband." *Id.* at 6. Therefore, the court found that the search and seizure of the drugs was lawful.

■ Ashley first argues that Hairston's search exceeded the bounds of a consensual search as set forth by this court in *Rodney*. He claims that while *Rodney* approved only a "continuous sweeping motion" to search the groin region, Hairston "used the tips of his fingers and pressed against appellant's crotch area." Appellant's Brief at 5–6. He contends that the trial judge's finding that Hairston "examined ... from the groin area to the upper thigh" in a "sweeping, patting, probing motion using the flat surface of [his] hands from the end of the palm to the tips of the fingers" supports his position; in particular, Ashley emphasizes that "probing" of a suspect's groin region is inappropriate. *Id.* at 6.

Ashley is correct that *Rodney* does not give the police free reign to perform the most intimate and intrusive search of a suspect's private areas. For example, the *Rodney* court emphasized that its decision was consistent with *United States v. Blake*, 888 F.2d 795, 797 (11th Cir.1989), which invalidated a search involving "frontal touching" of the defendant's private parts. *Rodney* limited the motions that searching officers may employ to those of a "typical pat-down frisk." *Rodney*, 956 F.2d at 298. And the Supreme Court has since observed that "squeezing, sliding, and otherwise manipulating" objects or areas on a suspect's person falls outside the bounds of a pat-down frisk. *Dickerson*, —— U.S. at ——, 113 S.Ct. at 2138.

In this case, however, Ashley's argument makes too much of the district court's choice of the word "probing." At the hearing, Hairston demonstrated for the trial judge precisely the manner in which Ashley was searched. From the transcript, it appears that Hairston "press[ed] in" on both sides of Ashley's legs from the pant cuff to the crotch, then "press[ed][ ] with his fingers" "on the upper part of [Ashley's] abdominal area," in the area "between his watch pocket[s], the belt and his genitals." There, Hairston testified, on Ashley's right side, he "felt the rock substance." The government's counsel asked Hairston whether he "[had] to grab at [Ashley's] pants and like feel it with [his] fingers underneath his clothes like use more of [his] hand to manipulate the material inside [the] pants." Hairston replied "No sir." The court pursued: "[D]on't you try to put your hand around the whole—what you're finding to find out how big it is and in other words to get a good grab on it?" Again, Hairston replied, "No, sir.... Once I feel the object ... I will [say] in my mind that ... you're carrying crack cocaine." Thus, while *Rodney* does indicate that general manipulation of a suspect's private areas will not be tolerated as part of a consensual search, Hairston's method appears congruent with the kind of limited search permitted by *Rodney*.

■ Ashley argues that even if Hairston's initial pat-down search was lawful, the district court erred in finding that it provided probable cause to "delve into the defendant's underwear." Findings at 5. Under *Minnesota v. Dickerson*'s "plain touch" doctrine, the question here is whether whatever Hairston felt during the consensual search enhanced his suspicion of Ashley to the point of providing the "probable cause" necessary for further searching. *Compare United States v. Gibson*, 19 F.3d 1449, 1451 (D.C.Cir.1994) (feeling hard, flat, angular object in suspect's pocket did not create probable cause for further search).

The district court found that probable cause did exist because Hairston, "based on [his] extensive knowledge concerning the packaging and transportation of drugs," could tell from the "feel" of the hard object

located during the initial pat-down that it was crack cocaine. Findings at 3–6. Ashley argues that Detective Hairston could have had no more than a mere suspicion that the object was crack. Ashley points to Hairston's statement at the hearing in support of his position:

> "[W]hen I feel, and I feel the rock substance ... my brain says maybe. And then to go further I would ask him to open his pants to confirm it more.

Transcript at 32. Hairston, however, explained immediately thereafter:

> I touched. I felt, I felt the rock substance. My brain said, that's crack cocaine. I asked Mr. Ashley to open his pants to be 100 percent.

*Id.* Although there may be some tension between these two statements, the district court's finding that Hairston recognized the package as crack is not "clearly erroneous."

Ashley also argues that because the crack was inside two pairs of pants, a pair of briefs, a paper bag, a paper napkin, and a plastic bag, its identity could not possibly have been "immediately apparent" to Hairston, as required by *Dickerson,* —— U.S. at —— ——, 113 S.Ct. at 2138–39. In *Dickerson,* a state police officer identified a small "lump" through a suspect's nylon jacket and a cellophane wrapping, and based thereon "formed the opinion" that the object was crack." *Id.* at ——, 113 S.Ct. at 2138. The Supreme Court noted, however, that the officer determined that the lump was contraband only after "squeezing, sliding, and otherwise manipulating the contents of the defendant's pocket." *Id.* Therefore, the plain touch doctrine did not apply because the object's contraband nature was not "immediately apparent." *Id.* at ——, 113 S.Ct. at 2139.

Here, however, the district court found that based solely on the "sweeping, patting, probing motion," Hairston, with his "training and experience," knew immediately that the object was crack cocaine. Findings at 5–6. Again, that finding is not "clearly erroneous."

Ashley further contends that the district court's finding of probable cause is inconsistent with this court's opinion in *United States v. Gibson,* 19 F.3d 1449, 1451 (D.C.Cir.1994).

In *Gibson,* we held that an officer's discovery of a hard, flat, angular object in Gibson's left pants pocket did not provide probable cause for further searching. We acknowledged that under *Dickerson* a "touch may reveal enough information to establish probable cause," but held:

> [N]ot in this case. [The officer] did not testify how often he had encountered such an object during a pat down, and he related nothing from his experience to correlate objects of this sort with criminal activity.... A flat angular object does not correspond with rocklike crack cocaine, or the twigs and leaves of marijuana, or capsule containing prescription drugs.

*Gibson,* 19 F.3d at 1451. The present case is quite different. The officer felt the object not in Ashley's pocket, but in his groin area, between his upper thigh and his pocket. The officer testified that he had previously found narcotics in that location on suspects 10–15 times. Most important, Hairston stated—and the district court found—not merely that the object "corresponded" to a package of crack, but that he recognized it immediately as crack. Given these facts and findings, *Gibson* does not foreclose a conclusion of "probable cause" in this case.

Finally, there is a question whether *Dickerson* permits any further invasion of privacy occasioned by a seizure of drugs from inside a suspect's underwear, even when probable cause has been found through the initial pat-down search. *Dickerson* clearly does not hold that when contraband is identified by feel it may immediately be confiscated no matter how great an invasion of privacy would result from the seizure. The *Dickerson* Court gave the following justification for the seizure of items identified by "plain feel":

> If a police officer pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity [as contraband] immediately apparent ... [t]he seizure of such an item whose identity is already known occasions no further invasion of privacy.

*Dickerson,* —— U.S. at —— —— ——, 113 S.Ct. at 2137–38 (internal citations omitted). In *Dickerson* itself, which involved removing co-

caine from a suspect's jacket pocket, there was no additional invasion of privacy from "seizing" the contraband. In other circumstances, however, that might not be true. Publicly removing a suspect's pants to confiscate contraband, for example, would appear to go substantially beyond the invasion of privacy from frisking.

In this case, the seizure of the drugs was within the rationale of the *Dickerson* opinion. The transcript from the evidentiary hearing reveals that precautions were taken to insure that Ashley was not subjected to public embarrassment. Hairston did not confront Ashley in the bus station, but followed him around to the side of the station. When Ashley put his hands over his head, Hairston asked him to put them down; he testified:

> I'm not trying to involve the whole bus station as to what's going on.... [T]he conversation between myself and Mr. Ashley is private.

Hairston further explained that during the actual seizure:

> I was standing directly in front of Mr. Ashley.... [W]e were close enough together so that the public wouldn't see [that Mr. Ashley's pants were unfastened].

Under these circumstances, seizure of the drugs did not add significantly to the invasion of privacy from the initial pat-down search.

On the basis of the trial court's findings on remand, Ashley's conviction is

*Affirmed.*