**Kenneth M. DICKERSON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 95–CM–837.**

District of Columbia Court of Appeals.

Submitted May 8, 1996.
Decided May 21, 1996.

---

Steven H. Schiff, Washington, DC, appointed by this court, was on the brief for appellant.

Eric H. Holder, Jr., United States Attorney, John R. Fisher, Roy W. McLeese, III, and Gina L. Simms, Assistant United States Attorneys, were on the brief for appellee.

Before FERREN, STEADMAN, and FARRELL, Associate Judges.

FERREN, Associate Judge:

The sole issue presented on appeal is whether the trial court erred in denying appellant Dickerson's motion to suppress physical evidence of nine ziplock bags containing a white rock-like substance recovered during what Dickerson concedes was a lawful *Terry*[1] stop. We affirm.

## I.

### A.

The trial court held a hearing on Dickerson's motion to suppress on April 15, 1995. After hearing the evidence, the judge denied the motion to suppress, and Dickerson entered a conditional plea of guilty to one count of possession of crack cocaine, D.C.Code § 33–541(a) (1993 Repl.). Dickerson noted a timely appeal.

The government presented evidence at the motions hearing that on September 8, 1994, an anonymous citizen flagged down a police car and informed the officers that he had seen an individual selling drugs in front of 1418 Euclid Street, N.W. He described the seller as a black male wearing black shorts, a black hat, and a white T-shirt. The officers drove to the specified address and saw a person, whom one of the officers described as matching the description "perfectly," sitting on the front porch. No one else was in the area. One officer, Rubin Gresham, asked the individual, later identified as appellant Dickerson, to approach the police car. Gresham then "gave the individual a pat down for weapon safety for my safety and [the other] officer's safety."[2]

As Gresham frisked Dickerson, he "felt a hard, moveable object in his crotch area." Gresham then unbuttoned and unzipped Dickerson's shorts, pulled open the waistband of Dickerson's underwear, saw a clear bag containing a rock-like substance, and removed the bag from Dickerson's underwear. The substance field-tested positive for crack cocaine; the officer arrested Dickerson.

When trying to amplify his description of the object in Dickerson's pants, Gresham explained that "the way it shifted and, like I said, in his crotch area, I pretty much, you know, can differentiate between, you know, his physical anatomy versus a[n] object being hidden in that type of area." The patdown had revealed an object that had felt as though "someone like put a sock in there to, you know, make them appear larger or hiding, just hiding almost anything" or "[s]omething like a package." It was a "hard moveable object ... [l]ike narcotics. With my experience, I can ... sense that they were narcotics." Gresham then testified that he had retrieved a bundle of narcotics during a frisk of the person on approximately 100 prior occasions, and that in about half those cases the object had been located near the suspect's crotch area. He further testified that two or three days earlier he had arrested someone possessing twenty-eight ziplock bags of narcotics at the "same address," and that he considered the area to be a "[v]ery high narcotic trafficking area." The trial court, in making its factual findings, said:

"The officer indicated that upon touching the object he recognized it based on its feel and the location it was in and his experience, and the location of the high drug area, and the tip that he received from the citizen, that this was contraband, and for that reason he seized it. I believe under the plain touch doctrine that it would justify his seizure of that object based on the fact that during the course of this lawful frisk he *immediately recognized this object as contraband,* given his experience and given the information that he had regarding what the defendant may have been possessing at that time." (Emphasis added).

The court then denied the motion to suppress.

### B.

"It is incumbent upon us, in this case as in any other, to eschew appellate

---

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

2. *See Minnesota v. Dickerson,* 508 U.S. 366, 377, 113 S.Ct. 2130, 2138, 124 L.Ed.2d 334 (1993) (referring to " 'strictly circumscribed' search for weapons allowed under *Terry* ").

fact-finding." *Brown v. United States,* 590 A.2d 1008, 1020 (D.C.1991). We therefore will not disturb the trial court's factual findings unless they are clearly erroneous or not supported by the record. *See Lawrence v. United States,* 566 A.2d 57, 60 (D.C.1989). We review *de novo* the trial court's legal conclusions. *See Lewis v. United States,* 632 A.2d 383, 385 (D.C.1993). "Essentially, our role [in reviewing a motion to suppress evidence] is to ensure that the trial court had a substantial basis for concluding that no constitutional violation occurred." *Brown,* 590 A.2d at 1020.

The Supreme Court has recognized the existence of a plain-feel doctrine, analogous to the plain-view doctrine, that permits warrantless seizures of contraband discovered during the course of a lawfully conducted search. *See Minnesota v. Dickerson,* 508 U.S. 366, 375–76, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993). As the Supreme Court explained:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

*Id.*

■ The "contour or mass," *id.,* of some items, such as a handgun, may make its identity "immediately apparent" because of its unique shape, size, or weight; something shaped like a handgun is unlikely to be anything else.[3] Other shapes, sizes, and weights, of course, are likely to be more

ambiguous—consistent, for example, with drug packages but also with cigarette, candy, and other small packages. In this latter situation, however, the officer's training and experience, including knowledge that the environment where the patdown takes place is a high crime area, can inform the officer's perception. As a result, the officers's touch—without forbidden manipulation of the object in the suspect's clothing, *see id.* at 377, 113 S.Ct. at 2138—can make the identity of the object "immediately apparent," *id.* at 375, 113 S.Ct. at 2137, for probable cause purposes even though a layperson might not have that immediate insight.[4]

■ It is important to reemphasize that this element of experience in touching the "contour or mass" of an object concealed on the person in no way lessens the critically important limitation on the plain-feel exception. When supported only by reasonable suspicion, the "touch" cannot go beyond the "bounds of the 'strictly circumscribed' search for weapons allowed under *Terry.*" *Id.* at 378, 113 S.Ct. at 2138 (citation omitted). The touch cannot amount "to the sort of evidentiary search that *Terry* expressly refused to authorize," *id.* at 378, 113 S.Ct. at 2139, such as " 'squeezing, sliding, and otherwise manipulating the contents' " of the suspect's clothing. *Id.* at 378, 113 S.Ct. at 2138 (citation omitted).

■ We recognize that this plain-feel doctrine can be abused. Trial courts must be careful to assure that a police officer's "immediately apparent" recognition of a concealed drug package, for example, is not too casually claimed or accepted. In this case, however, an apparently reliable tip provided an officer with reasonable suspicion that a described person was carrying drugs at a

---

**3.** *But see Marshall v. District of Columbia,* 391 A.2d 1374, 1377 (D.C.1978) (police thought protrusion from suspect's back pocket, under topcoat, was gun; protrusion actually was folded copy of District of Columbia gun regulations).

**4.** *See, e.g., Texas v. Brown,* 460 U.S. 730, 733, 742–43, 103 S.Ct. 1535, 1538, 1543–44, 75 L.Ed.2d 502 (1983) (plurality opinion) (probable cause supported by officer's observation of "opaque, green party balloon," officer's experience with narcotics packaged in balloons, and " 'medium' area of narcotics traffic"); *In re*

*J.D.R.,* 637 A.2d 849, 850 (D.C.1994) (probable cause supported by officer's experience with particular type of narcotics packaging and officer's view of ziplock bag partially concealed under suspect's arm cast in high drug area); *United States v. McCarthy,* 448 A.2d 267, 270 (D.C.1982) (probable cause supported by "officer's familiarity with the packaging of illegal drugs," of suspect's companion, and officer's view of hand-rolled cigarette in car ashtray in area known for narcotics).

particular place known for narcotics trafficking. Carrying out an authorized patdown for weapons, the officer came upon a package that he said immediately felt like the kind of drug package he had touched on numerous occasions in the same unusual location on the body, namely the crotch area. On such facts, we cannot say it was unreasonable for the trial court to credit the officer's testimony and thus to find that a small cache of drugs was "immediately apparent" to the officer conducting the frisk.[5]

The trial court's factual finding that the officer "immediately recognized" the object on appellant Dickerson as contraband is supported by the record.[6] Gresham's substantial experience with narcotics lent credibility to his unartful explanation that he was able to identify the bulge in Dickerson's shorts as narcotics.[7] There is no evidence that Gresham, in feeling a "hard moveable object" during the frisk, had squeezed, slid, or otherwise manipulated the object to determine what it was.[8] He therefore did nothing to expand the invasion of Dickerson's privacy beyond the limited intrusion—a frisk for weapons—that *Terry* permits.[9] Given Gresham's testimony, and the clarity and specificity of the trial court's factual findings, we conclude that the officer's actions did not overstep the bounds of a lawful frisk as explained in the *Dickerson* opinion.

▮ Nor did Gresham act impermissibly in retrieving the object from Dickerson's underwear. The plain-feel doctrine, in language previously applied to the plain-view doctrine, "authorizes seizure of illegal or evidentiary items [identifiable through touching by] a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." *Illinois v. Andreas,* 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983) (referring to plain-view doctrine); *see also Dickerson,* 508 U.S. at 375–78, 113 S.Ct. at 2137–38; *Ashley,* 308 U.S.App.D.C. at 384–85, 37 F.3d at 681–82. Once Gresham identified the object as contraband, therefore, he had probable cause to open Dicker-

---

**5.** An officer must possess probable cause that the item is contraband or evidence of a crime to seize the object lawfully. *Brown,* 460 U.S. at 741, 103 S.Ct. at 1543 (plurality opinion) ("immediately apparent" requires that officer possess probable cause, but does not imply officer must possess "an unduly high degree of certainty as to the incriminatory character of evidence").

**6.** *Compare United States v. Ashley,* 308 U.S.App. D.C. 381, 384–85, 37 F.3d 678, 681–82 (1994) (lawful seizure of drugs from suspect's underwear where officer immediately recognized object as crack cocaine based in part on "previously [finding] narcotics in that location on suspects 10–15 times") *and United States v. Hughes,* 15 F.3d 798, 802 (8th Cir.1994) (upholding plain-feel seizure of crack cocaine where detective testified that his "first impression was that the object was contraband") *with United States v. Schiavo,* 29 F.3d 6, 9 (1st Cir.1994) (upholding grant of motion to suppress where trial court found that "[b]ecause Trooper Duffy did not know what the bulge was after the initial pat frisk and because he needed to conduct a further, unwarranted search of the bulge and its contents to determine what it was, the 'plain feel' doctrine espoused in *Dickerson* does not apply"); *United States v. Gibson,* 305 U.S.App.D.C. 246, 248, 19 F.3d 1449, 1451 (1994) (upholding suppression of evidence where officer only could identify "lump" as "a hard, flat angular object") *and United States v. Ponce,* 8 F.3d 989, 999 (5th Cir.1993) (unlawful plain-feel seizure where offi-

cer felt a little bump in suspect's pants pocket, further fingered the bump, and then determined object was something "squishy" that, based on his experience, he believed might be folded dollar bills containing a razor blade).

**7.** *See Ashley,* 308 U.S.App.D.C. at 384, 37 F.3d at 681. We have noted, in a different context, that "[t]he experience of a police officer with the modus operandi of narcotics transactions is sometimes relevant to whether he made a reasonable conclusion that criminal activity was afoot." *In re D.J.,* 532 A.2d 138, 143 (D.C.1987).

**8.** *Compare Dickerson,* 508 U.S. at 377, 113 S.Ct. at 2138 (unconstitutional search where officer continued to explore suspect's pocket to identify object, after establishing it was not a weapon); *Schiavo,* 29 F.3d at 9 (unconstitutional search where officer "did not know what the bulge contained even after he had conducted the pat frisk" but continued to explore paper bag in suspect's pocket); *Ponce,* 8 F.3d at 999 (suggesting that officer's "further fingering" of a bump in suspect's pocket may have overstepped the bounds marked by *Terry* ).

**9.** *Compare United States v. Taylor,* 302 U.S.App. D.C. 349, 352, 997 F.2d 1551, 1554 (1993) (impermissible for officers to conduct second frisk, after establishing that suspect was not armed, to identify object in suspect's pocket).

son's pants and remove the illegal object.[10] The trial court did not err in denying the motion to suppress.

*Affirmed.*

---

**10.**   Our recent opinion in *United States v. Adell,* 676 A.2d 446 (D.C.1996), is not contrary to our holding here.   In *Adell,* the government did not argue that the officer had probable cause to seize the plastic bag, nor did the officer articulate any suspicion that the bag contained contraband, much less show the immediate recognition found in the case before us.