The STATE of Ohio, Appellee,

v.

OBORNE, Appellant.

[Cite as *State v. Oborne* (1994), 99 Ohio App.3d 577.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 14406.

Decided Dec. 28, 1994.

---

*Mathias H. Heck, Jr.,* Montgomery County Prosecuting Attorney, and *Walter F. Ruf,* Assistant Prosecuting Attorney, Appellate Division, for appellee.

*Brian D. Weaver,* for appellant.

---

FAIN, Judge.

Defendant-appellant Raymond F. Oborne appeals from his conviction and sentence, following a no-contest plea, for drug abuse. Oborne contends that the trial court erred by denying his motion to suppress evidence obtained from him before he was arrested. We conclude that the searching officer exceeded the justifiable limits of a protective search for weapons by opening a closed film canister that he had removed from Oborne's pants pocket. There was insufficient probable cause to justify the search of the film canister. Accordingly, we reverse the judgment and remand this cause to the trial court for further proceedings in keeping with this opinion.

## I

On February 5, 1993, Randy Monnin, working the night shift at the Harrison Township Fire Department, telephoned the Montgomery County Sheriff's Office to report that he had "heard a loud bang" from the area around the Markey Inn. Monnin did not see what caused the noise. The fire station is located at 5190 Markey Road and the Markey Inn is located at 5202 Markey Road. Monnin looked out the window, saw someone leaving in a car, noted the description of the car, and telephoned the Montgomery County Sheriff's dispatcher with the information.

Deputy Gregory Textra responded to the report of "shots fired" under guise of suspicious activity at 5202 Markey Road. Textra did not see any cars matching the description given by the dispatcher and continued to patrol the area.

About twenty minutes later, Monnin saw the same car back in the parking lot of the Markey Inn parked under a street light. Because Monnin was able to get a better view of the car and the driver, he telephoned the sheriff's dispatcher a second time with a more detailed description. Monnin did not speak directly to any of the deputies from the sheriff's office before Oborne was arrested.

In response to the second dispatch report, Textra returned to the Markey Inn, along with Deputy Robert Copenhaver, who arrived in a separate vehicle. Copenhaver called in the license plate number and determined that Raymond F. Oborne owned the car. As the deputies entered the Markey Inn, Copenhaver asked if any of the customers knew Oborne. A customer pointed to Oborne, who

was standing near a pool table. Oborne was the only person in the bar who matched the description of the driver given in the dispatch.

Textra and Copenhaver approached Oborne regarding the "possibility of a weapon." Both deputies testified that as they approached him they observed that Oborne did not have a weapon or firearm in his possession. After ordering Oborne to place his hands against the wall, Textra performed a pat-down search for the purpose of "check[ing] for possible weapons or *any possible contraband.*" (Emphasis added.) Textra testified that Oborne turned away from the wall and moved his right leg inward in an attempt to hide an area of his body from the pat-down search. Textra "felt a hard object in his left front pants pocket" and "felt that it was possibly a weapon or contraband." Textra testified that he thought the object might be a firearm. He did not testify, however, that his experience led him to believe that the canister might contain contraband.

"Q. And when you felt the bottle in Mr. Oborne's left front pants pocket, did you think that was a gun? A weapon?

"A. I felt that it may be a firearm. * * * May be part of a firearm, yes.

"Q. And what part of a firearm might it have been?

"A. Due to the many different types of pistols, either it's a small caliber automatic or revolver.

"Q. Now, when you removed it from Mr. Oborne, * * * you realized it was not a weapon at that point. Correct?

"A. Yes.

"Q. And you at a point in time removed the top of the bottle?

"A. Yes.

"Q. By the way, this night, did you ever find any guns?

"A. Not that I recall, sir. No. I certainly wouldn't think it, because it would be indicated on the report had we."

Textra described the object as a translucent canister that could "be held in the palm of the hand, two or three inches in height" and about one inch wide. The canister had a top on it when Textra removed it from Oborne's pocket. Textra testified that he did not think the closed canister contained a firearm and that he had no idea what was inside the canister before he opened it.

Copenhaver, who held the closed canister while Textra finished the pat-down and then returned it to Textra, described the canister as a clear, unopened "film case" that he knew was not a firearm and did not contain a firearm. Unlike Textra, Copenhaver said that he could see paper in the canister. The record does not indicate that, at the time of the frisk, Copenhaver talked to Textra about

the contents of the canister before Textra opened it. Nor does the record indicate that Copenhaver believed that the canister might contain contraband, based on his experience. Both deputies testified that no weapons or firearms were found on Oborne that night. Copenhaver testified that neither he nor Textra had a search warrant. Textra arrested Oborne for drug abuse for possession of cocaine found inside the canister after the pat-down search.

Oborne moved to suppress the evidence obtained as a result of the search. When his motion to suppress was overruled, Oborne pled no contest to drug abuse, was found guilty, and was sentenced accordingly. From his conviction and sentence, Oborne appeals.

## II

Oborne's second assignment of error is as follows:

"The court below erred in overruling appellant's motion to suppress evidence since the pat down search of appellant exceeded the scope of a *Terry* Search."

The permissible scope of a *Terry* search is "a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Terry v. Ohio* (1968), 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909. *"The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence."* (Emphasis added.) *State v. Evans* (1993), 67 Ohio St.3d 405, 408, 618 N.E.2d 162, 166, citing *Adams v. Williams* (1972), 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617.

"It is axiomatic that an incident search may not precede an arrest and serve as part of its justification." *Smith v. Ohio* (1990), 494 U.S. 541, 543, 110 S.Ct. 1288, 1290, 108 L.Ed.2d 464, 467, citing *Sibron v. New York* (1968), 392 U.S. 40, 63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917, 934–935. Given that an officer may have a reasonable and articulable suspicion to stop a suspect and conduct a *Terry* search for possible weapons, that officer cannot expand the protective frisk into a general search to discover evidence or contraband. *State v. Brown* (1992), 83 Ohio App.3d 673, 676, 615 N.E.2d 682, 684.

Unless probable cause and exigent circumstances exist, once the officer determines that the object detected in the outer clothing of the suspect is not a weapon, the search must stop. *Minnesota v. Dickerson* (1993), —— U.S. ——, ——, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334, 345–346; *State v. Evans* (1993), 67 Ohio St.3d 405, 414, 618 N.E.2d 162, 170, certiorari denied (1993), —— U.S. ——,

114 S.Ct. 1195, 127 L.Ed.2d 544. If the officer is unable to determine during the pat-down whether the object is a weapon, the officer may reach into the pocket and remove the object in order to examine the object visually to determine whether it is a weapon. *Dickerson* at ——, 113 S.Ct. at 2136, 124 L.Ed.2d at 344; *Evans, supra,* paragraph two of the syllabus.

Once the officer has visually examined the object and concludes that it is not a weapon, that it does not contain a weapon, and that it is not obviously contraband, then the officer's justification for conducting a limited frisk for weapons is dissipated, and the officer may not then search for evidence or contraband, generally, without probable cause and exigent circumstances. *State v. Chatton* (1984), 11 Ohio St.3d 59, 63, 11 OBR 250, 253–254, 463 N.E.2d 1237, 1240–1241, certiorari denied (1984), 469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116. If the officer lacks "probable cause to believe that an object in plain view is contraband without conducting some further search of the object—*i.e.,* if 'its incriminating character [is not] "immediately apparent," ' [*Horton v. California* (1990), 496 U.S. 128, 137, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112, 123]—the plain-view doctrine cannot justify its seizure. [*Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) ]." *Evans, supra,* 67 Ohio St.3d at 423, 618 N.E.2d at 176 (Wright, J., dissenting).

This court has not extended the scope of a *Terry* search to permit a general search for evidence or contraband as argued by the state in its brief or as stated by the trial court in its Decision and Entry Overruling Defendant's Motion to Suppress, dated November 8, 1993. The trial court specified that it based its denial of Oborne's suppression motion on our opinions in *State v. Smoot* (Nov. 17, 1989), Clark App. No. 2588, unreported, 1989 WL 138412, and *State v. Hicks* (May 22, 1990), Montgomery App. No. 11900, unreported, 1990 WL 68979. Both cases are distinguishable.

In both *Smoot* and *Hicks,* the officer conducting the pat-down search acquired probable cause during the course of the pat-down search to conclude that the defendants were carrying drugs or contraband. In *Smoot,* during the officers' pat-down of the defendant, a woman running toward Smoot yelled to the officers that Smoot did not have any "crack." She also told Smoot that an informant had told the police that Smoot had been selling crack.

At the same time, one of the officers frisking Smoot felt a "big bulk, [or] bulge" in the defendant's front pants pocket. The officer testified that he thought this bulge was drugs and not a weapon. This court determined that the officer had probable cause (and exigent circumstances) to conduct a warrantless search based on the protestations of the woman, the experience of the officer, the likelihood that Smoot would dispose of the drugs before the officers could get a warrant, and the testimony of the officer that this area was known as a high crime area. Given the totality of circumstances in *Smoot,* this court found that

the officer acquired probable cause to believe that Smoot had drugs in his pocket and overruled Smoot's contention that the evidence should have been suppressed.

In *Hicks*, the officer responded to a dispatch to take the report of a stolen car. The owner of the car told the officer that he had been driving around in his car earlier that day in order to buy drugs when two other men had pushed him out of his car. A few minutes after getting this information from the car owner, the officer was told by a second man that the missing car was parked in an alley about a half block away from where the officer was standing. As the officer approached the car, he saw Hicks in the front passenger's seat with a cigarette lighter in his hand. When Hicks saw the officer approach the car, he put something in his left jacket pocket. The officer asked Hicks to get out of the car and then patted Hicks down for his protection. Based on his past experience, the officer testified that he felt a still warm crack pipe or straight shooter in Hicks's jacket pocket. The officer testified that he could tell that the object in Hicks's pocket was not a weapon.

This court held that the trial court reasonably concluded, given the totality of circumstances, that the officer acquired probable cause that Hicks was carrying contraband from his observation of Hicks's movements in the car, from the object detected during the pat-down, and from the information that the car had been recently used in an effort to buy drugs. Thus, probable cause combined with exigent circumstances permitted the officer's retrieval and seizure of the contraband.

█ Given the particular facts of this case, as testified to by Textra, the officer conducting the protective frisk, Textra was justified in reaching into Oborne's pocket during the frisk and removing the object to look at it to determine whether it was a weapon because Textra testified that he could not identify the object by touch. Textra thought it might be a firearm or part of a firearm. Textra then testified that when he removed the closed canister from Oborne's pocket, he realized as he looked at it that it was not a weapon. At the point that Textra knew that the closed canister was not a weapon and determined that Oborne had no weapons of any sort on his person, his justified intrusion into Oborne's rights of privacy was at an end; Textra had dispelled all articulable and reasonable suspicions that Oborne was armed and dangerous. Curiously, when asked on direct and on cross-examination what he was looking for during his *Terry* search, Textra responded that he was looking for "weapons *or contraband.*" (Emphasis added.)

We agree with Oborne's contention that when Textra opened the closed canister, his search exceeded the bounds permitted by *Terry*. The state has failed to show facts rising to the level of probable cause that the unopened canister, particularly when considered from the viewpoint of Textra, the officer who conducted the search, contained drugs or other contraband.

The record does not indicate that the Markey Inn is in a high-crime area. The record also lacks any indication that the officers had any probable cause to suspect that Oborne might be carrying contraband. Further, the deputies testified that Oborne (a) made no furtive movements as they approached him, (b) did not appear to be carrying or concealing any weapons as they approached him, (c) was not engaging in any illegal activity that they observed, (d) did not attempt to flee the bar or evade the officers, and (e) did not resist Textra during the frisk other than to try to shift the contents of his pants pockets. Finally, neither deputy testified to a belief that the closed canister contained contraband based on the deputy's years of experience in law enforcement.

With respect to Oborne's second assignment of error, we conclude that the testimony in the record does not support the trial court's findings of fact that (a) Textra believed the canister might contain cocaine based on his years of experience and (b) "[Textra] could see a white powdery substance and some small paper bits inside [the vial]." The record indicates that the trial court erred in denying Oborne's motion to suppress.

Oborne's second assignment of error is sustained.

### III

Oborne's first assignment of error is as follows:

"The trial court erred in overruling appellant's motion to suppress evidence since the state did not establish the factual basis for an investigative stop made in response to a police dispatch."

In view of our disposition of Oborne's second assignment of error, we find it unnecessary to consider his first assignment of error. Although Oborne's written motion to suppress originally encompassed statements he made to the officers following the stop, his attorney made it clear at the suppression hearing that the inclusion of the statements was inadvertent. Therefore, since we have concluded that Oborne was entitled to the suppression of the film canister because the searching officer lacked probable cause to open it, we need not consider Oborne's contention that the initial stop was unlawful.

### IV

Oborne's second assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

GRADY, P.J., and BROGAN, J., concur.