The STATE of Ohio, Appellee,

v.

DeCAMINADA, Appellant.

[Cite as *State v. DeCaminada,* 148 Ohio App.3d 213, 2002-Ohio-2917.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19062.

Decided June 14, 2002.

**214**

F. Jay Newberry, Kettering Prosecutor, for appellee.

Don A. Little, for appellant.

GRADY, Judge.

{¶ 1} Defendant, Mona L. DeCaminada, appeals from her conviction and sentence for possession of a controlled substance, R.C. 2925.11(A), which were entered on defendant's plea of no contest after the trial court had denied defendant's motion to suppress evidence.

{¶ 2} The evidence which defendant sought to suppress is Hydrocodone, a Schedule III drug. It was inside a prescription pill bottle seized from defendant by Centerville Police Officer Michael Hawley on March 12, 2001.

{¶ 3} Officer Hawley testified that on that date he was assigned to "bike patrol" during the evening hours. He wore a white shirt, a breast badge, and a helmet, each bearing the mark "Centerville Police."

{¶ 4} At about 10:00 p.m. on that date Officer Hawley saw a car parked in a lot adjacent to an apartment complex. Though it was then dark, light from nearby businesses provided some illumination of the lot. The area had a history of break-ins. Officer Hawley's attention was attracted to that car, in particular, because its interior "dome" light was illuminated.

{¶ 5} Officer Hawley pedaled toward the car, and as he approached he saw through the rear window that a woman was seated in the front passenger seat. The woman was defendant, Mona L. DeCaminada. Officer Hawley further testified that "[i]t appeared that she was looking down towards her lap and that she was fiddling with something in her lap area." He then dismounted and walked to the driver's door.

{¶ 6} Officer Hawley saw that the driver's window was lowered about four or five inches. He further testified:

{¶ 7} "As I went up to make contact with the occupant of the vehicle, the uh, the occupant, upon making my presence known, made a furtive movement with her left hand down between the door and the driver's seat which kind of arose my suspicion. I asked her what she was doing and she told me nothing at that time. I asked her if she lived in the area and she told me that she lived in the apartments. I asked for some identification to uh, verify that information. As

uh, she reached into her purse to remove some identification I looked down between the door area where she had placed her hand when I had approached and made my presence known and in plane [sic] view I could see a medicine pill bottle between the seat and the door through the open window and the clear glass.

{¶ 8} "Q. What did the bottle look like?

{¶ 9} "A. A um, brownish regular pill bottle you would get from a uh, um, pharmacy with a light cap.

{¶ 10} "Q. Where was it that you saw this pill bottle?

{¶ 11} "A. Between the door, the inside of the door and the driver's left side of the driver's seat laying [sic] uh, the door frame area.

{¶ 12} "Q. Was the door closed at the time that you saw this?

{¶ 13} "A. Yes it was."

{¶ 14} Officer Hawley testified that he then used his flashlight to illuminate the area where the pill bottle sat. Defendant produced a card from her purse that identified her as Mona DeCaminada. Officer Hawley further testified:

{¶ 15} " * * * I'm not sure if that's correct or not but, while I'm speaking to her I asked her what the pill um, she handed me that identification and I asked her what the pills were. And she denied having any possession of any pills, I again asked her I said, 'Ma'am I can see the pill bottle down between the seat where you placed your hand um, can I see it please?' And at first she said, 'No' and I said, 'All I want to do is make sure that they belong to you,' at which time on the second (2nd) request she reached down herself and handed me the uh, pill bottle from between the seat and the door."

{¶ 16} When Officer Hawley examined the pill bottle he discovered that the name on the label was not defendant's, or at least the name she had given him. He kept the bottle and departed, without arresting or citing the defendant. When the pills inside were subsequently determined to be a controlled substance, defendant was charged with a violation of R.C. 2925.11(A).

{¶ 17} When asked what it was about the pill bottle that first aroused his suspicions, Officer Hawley replied:

{¶ 18} "Well if someone is making a furtive gesture to conceal property and I look down and see a pill bottle all I wanted to do was make, it appeared to me that she was possible trying to hide something that didn't belong to her or that was illegal to possess.

{¶ 19} "Q. All right. Let me ask the question a little more precisely than I did. Once she handed you the bottle and you looked at it, what was it about that

pill bottle that made you believe that something was amiss as far as whose names were on it?

{¶ 20} "A. Once I looked at the pill bottle the uh, name on the pill bottle belonged to a Rhonda Wahlrab and that's not who the Defendant identified herself as.

{¶ 21} "Q. So you took those pills with you when you left the defendant's presence that night?

{¶ 22} "A. Yes I did."

{¶ 23} Defendant also testified at the suppression hearing. She stated that she was at the time a resident of the apartment complex adjacent to the lot where her car was parked that night, and that it was the place she regularly parked her car. Defendant stated that she first saw Officer Hawley when he shined his flashlight into her car, frightening her. She testified that she jumped and told him, "God, you scared me." She stated that she offered Officer Hawley a tag or sticker that authorized her to park there, but he declined to examine it. She also testified that she had been stopped by Officer Hawley about three months before because the tags on her car had expired.

{¶ 24} Concerning the events that led to Officer Hawley's seizure of the pill bottle, defendant's testimony was generally consistent with the officer's. She said that the pill bottle remained in her lap when she reached into her purse for identification. However, defendant–appellant also said that she refused the officer's request for the pill bottle three times, each time telling him "No." She finally handed it over after "[h]e said, and this is a quote, 'Okay, we can do it the hard way.' Started to ask me to step out of the car and I realized he was going to take it at that point anyway and then I handed it to him."

{¶ 25} Defendant's motion to suppress alleged that her stop and detention by Officer Hawley "were without reasonable and articulable suspicion." The trial court denied the motion, stating:

{¶ 26} "After a review of the testimony, the Court finds that Officer Hawley's initial encounter with Defendant was appropriate in view of the time and place where it occurred, that Defendant was not arrested or unreasonably detained, and that Defendant voluntarily handed the prescription bottle to Officer Hawley."

{¶ 27} Defendant subsequently changed her plea of not guilty to a plea of no contest and was convicted on her plea. She was sentenced to 30 days' incarceration and was required to pay a fine of $250. Her driver's license was suspended for 180 days. The court stayed execution of its sentence after a timely notice of appeal was filed.

## ASSIGNMENT OF ERROR

{¶ 28} "The trial court erred in overruling appellant's motion to suppress evidence because the detention of appellant by the police officer for some 10 to 15 minutes was without reasonable cause and/or articulable suspicion and, thus, violated appellant's right to be free from unreasonable seizures of her person in violation of the Fourth Amendment of the United States Constitution as made applicable to state action by the Fourteenth Amendment of the United States Constitution."

{¶ 29} The Fourth Amendment protects persons against unreasonable searches and seizures, and warrantless searches are unreasonable, per se, and therefore illegal. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. Evidence seized illegally must be suppressed upon a defendant's timely motion to suppress. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. The movant need only show that the search or seizure lacked the benefit of a warrant. It then becomes the state's burden to demonstrate that the search or seizure was nevertheless justified by one of the recognized exceptions to the warrant requirement.

{¶ 30} Defendant-appellant's motion to suppress anticipated the justification she thought the state might offer by arguing that the exception recognized in *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, had no application. That exception permits an officer who possesses a reasonable and articulable suspicion that criminal activity is afoot to briefly detain the suspect in order to resolve the suspicion through investigation. If the officer has reasonable grounds to suspect that the person is armed and a danger to the officer and others around them, the officer may perform a limited pat-down search of the suspect's outer clothes for weapons. Id. The same does not apply to a search for suspected contraband or other evidence of crime. The officer must possess probable cause to believe that such evidence exists and will be located in a pat-down search in order to perform one for that purpose. Id.; *State v. Oborne* (1994), 99 Ohio App.3d 577, 651 N.E.2d 453.

{¶ 31} Here, there was no search. There was, however, a seizure of the pill bottle. Defendant-appellant's motion argued that there was, leading to that, an unreasonable seizure of her person in the form of a detention for which the officer lacked a reasonable and articulable suspicion. The trial court rejected that claim, finding that either no *Terry* detention had occurred, or if one did occur the officer possessed the reasonable and articulable suspicion required to perform it. The court also found that defendant-appellant had voluntarily consented to the officer's seizure of the pill bottle by handing it over to him.

{¶ 32} In arguing that her detention was illegal, defendant-appellant focuses on the fact that it lasted between 10 and 15 minutes, and she claims that the officer lacked a particularized suspicion of criminal activity. Such a suspicion requires some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. *United States v. Cortez* (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621. "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Id., 534 U.S. 266, 122 S.Ct. at 750–751, 151 L.Ed.2d 740, quoting *Cortez,* supra. To determine whether the officer was presented with a justification of that kind, courts must look to the totality of the circumstances. *United States v. Arvizu* (2002), 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740. Further, courts must give due weight to factual inferences drawn by law enforcement officers from those facts and circumstances. Id.

{¶ 33} The state's position on this point is that no *Terry* detention occurred, or if one did occur it was justified by the officer's reasonable and articulable suspicion of criminal activity. The trial court may have agreed with that view, but it is not entirely clear whether it relied on one to the exclusion of the other.

{¶ 34} The protections afforded by the Fourth Amendment are not implicated in every situation of police/citizen conduct. *California v. Hodari D.* (1991), 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690. The test for determining whether a person has been seized, which triggers the protections of the Fourth Amendment, is whether, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *United States v. Mendenhall* (1980), 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497. That generally occurs when the police officer has by either physical force or show of authority restrained the person's liberty, so that a reasonable person would not feel free to decline the officer's requests or otherwise to terminate the encounter. Id.

{¶ 35} Officer Hawley's conduct in approaching defendant-appellant's car and initial questioning her while she sat inside may not have risen to the level of a detention. However, his subsequent request for confirmation of her identity and his repeated requests to examine the pill bottle gave the encounter a more investigative character. Those factors, coupled with the late hour and the fact that the officer was in uniform, caused the encounter to become a detention at some point during its 10 to 15 minutes of duration. It defies common sense to believe that a reasonable person in defendant-appellant's position would feel free to decline those requests and/or to get out of her car and leave before the officer told her she could.

{¶ 36} Having found that a detention took place, we must next inquire whether the officer had a reasonable and articulable suspicion of criminal activity required to perform one. We conclude that he did. The hour was late and the area was but dimly lighted. He saw a lone woman seated in the passenger seat of a car. Break-ins had occurred in the area. It was quite possible that the woman was waiting for the driver to return after performing a break-in. Of course, it was also possible that she was there for a wholly innocent purpose. However, we are required to give weight to the inferences the officer drew from the facts and circumstances. before him, and on that basis we find that his detention of defendant-appellant for the time involved was authorized by the rule of *Terry*.

{¶ 37} It was not Officer Hawley's detention of defendant-appellant that yielded the drugs which her motion sought to suppress, however. The drugs were handed over to the officer by defendant-appellant upon his request to see the pill bottle. But for the requests he made, defendant-appellant would not have handed him the pill bottle. The trial court, quite properly identifying the determinative issue, found that she acted voluntarily. We do not agree.

{¶ 38} Because the pill bottle containing drugs was seized by a law enforcement officer without benefit of a warrant, the court was required to suppress that evidence on defendant-appellant's motion unless the court found an exception to the warrant requirement. One form of exception is consent. The state must show by clear and convincing evidence that any consent on which it relies to justify a warrantless search or seizure was freely and voluntarily given. *Bumper v. North Carolina* (1968), 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797. Consent is not voluntary if it is the product of coercion. Whether the "consent" was the product of coercion must be determined from the totality of the circumstances. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854.

{¶ 39} Nothing in *Terry* or its progeny authorized Officer Hawley to seize the pill bottle he saw in defendant-appellant's car. It was not a weapon, and presented no risk of harm. It was, as the officer testified, a "regular" pill bottle. He might nevertheless ask to examine it. If it is then handed over, any resulting search or seizure is consensual. However, "once such a request is clearly and definitively denied, the encounter begins to take on a coercive tone." *State v. Jackson* (1996), 110 Ohio App.3d 137, 143, 673 N.E.2d 685. Further, "the suspect's earlier refusal to give consent is a factor which is properly taken into account as a part of the 'totality of the circumstances' in judging the later consent under *Schneckloth* formula." LaFave, Search and Seizure (3d Ed.), Section 8.2(f).

{¶ 40} The critical issue in *Schneckloth* was whether there can be a valid consent without proof that the person consenting knows he has the right to

refuse. That inquiry is irrelevant when the person invokes his Fourth Amendment right. However, and unlike a request for an attorney that operates to invoke the Fifth Amendment right, per *Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, invocation of the Fourth Amendment right does not bar further requests by police that it be waived. Nevertheless, if those requests overcome the subject's free will, a resulting consent is a product of coercion. "In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." *Schneckloth*, supra, 412 U.S. at 229, 93 S.Ct. 2041, 36 L.Ed.2d 854.

{¶ 41} The trial court did not say that it credited the testimony of Officer Hawley over defendant-appellant's. There are differences relevant to the issue of coercion. The officer testified that he made two requests; defendant-appellant testified to three. She also said that he implied a more difficult and prolonged detention if she failed to cooperate. The officer made no mention of that. Even so, and assuming that the trial court credited the officer's version of those differences, we believe that coercion is portrayed.

{¶ 42} Defendant-appellant, a female, was confronted by a uniformed police officer as she sat alone in her car at approximately 10:00 p.m., in a dimly lighted location. The location was not remote, but no other persons were around. She was frightened when the officer appeared and shined his light in her eyes. This was followed by questioning that lasted from between 10 and 15 minutes, to no apparent purpose.

{¶ 43} When the officer eventually developed an interest in the pill bottle and asked defendant-appellant to hand it over, she refused. It is reasonable to infer that she refused because the bottle contained evidence that could result in criminal charges against her. That fact supports a finding that her subsequent acquiescence to the officer's renewed demand was involuntary, not a consent that was the product of defendant-appellant's own free will. Stated conversely, existence of those facts, on this record, precludes a finding that the voluntariness of defendant-appellant's "consent" is demonstrated by clear and convincing evidence. *Bumper*, supra.

{¶ 44} A suspect's refusal to hand over incriminating evidence is not necessarily determinative of coercion. However, it is one factor, and an important factor, in determining whether coercion was applied to obtain it through further demands. Also significant is the subject's vulnerability, the reasonableness of the officer's other conduct, as well as the time of day, location, and proximity of other persons. On the totality of those circumstances, as portrayed by this record, we conclude that the officer seized the pill bottle from defendant-appellant absent

her voluntary consent. Therefore, the trial court erred when it denied her motion to suppress on a contrary finding.

{¶ 45} The assignment of error is sustained. The order from which the appeal was taken will be reversed, and the case will be remanded for further proceedings.

Judgment reversed
and cause remanded.

BROGAN and FREDERICK N. YOUNG, JJ., concur.