**UNITED STATES, Appellant,**

v.

**James E. ADELL, Appellee.**

**No. 95–CO–388.**

District of Columbia Court of Appeals.

Argued Dec. 15, 1995.

Decided May 15, 1996.

_____

John R. Fisher, Assistant United States Attorney, Washington, DC, with whom Eric H. Holder, Jr., United States Attorney, and Mary B. McCord and Gregory A. Gruber, Assistant United States Attorneys, were on the brief, for appellant.

Barney T. Hamlin, Washington, DC, for appellee.

Before TERRY, SCHWELB, and RUIZ, Associate Judges.

TERRY, Associate Judge:

After appellee Adell was stopped by the police for a traffic violation, a police officer recovered a quantity of cocaine inside a plastic bag which the officer removed from Adell's pocket. The trial court ruled that the officer had violated Adell's Fourth Amendment rights when he reached into the pocket and granted a motion to suppress the cocaine. We affirm, but on a ground different from that relied upon by the trial court.

I

At about 6:00 p.m. on June 14, 1994, two police officers stopped Adell's car on Florida Avenue, N.W., because it lacked a front license plate and an inspection sticker. Both officers got out of their cruiser and approached Adell's car on foot. As Officer Noreen Schirmer spoke with Adell, who was in the driver's seat,[1] she noticed that he was "acting really nervous, his voice was shaking and quivering, and his hands were shaking," so she asked him to get out of the car. She also asked whether he would mind if she and her partner, Officer Scott Reynolds, patted him down for weapons. He replied that he did not mind.

Just as the officers were about to start the frisk, Adell tried to reach into his left front pants pocket. Officer Schirmer told him, "Don't put your hand in your pocket," and ordered him to place both hands on top of the trunk. Adell again reached for the same pocket, and Schirmer again told him not to put his hand in his pocket. Nevertheless, he put his hand in the pocket "up to his knuckles," whereupon Officer Reynolds immediately grabbed Adell's wrist and pulled his hand out of the pocket. Reynolds testified that he did so because he "didn't know what he was going for in there."

Officer Reynolds then stuck his own hand into Adell's pocket "to see what he had." The officer explained that he was acting for his own safety:

> I didn't know what he was going for. Officer Schirmer had not been able to complete a patdown. I didn't know if he was

1. Another man, Alfred Morrow, was seated in the front passenger seat.

going for a weapon or not, what he was going to do.

Reynolds felt no weapon in Adell's pocket, but he did feel "a plastic bag with some kind of substance in it, what [he] thought was a rock-like substance." He removed the plastic bag from the pocket and found that it contained grains of rice. Then, without opening the bag, he turned it in his hand so that the rice moved around inside, exposing to his view four smaller ziplock bags of clear plastic which were in the bag with the rice. Inside those smaller ziplock bags Reynolds saw a white powder, which was later determined to be cocaine. Alfred Morrow, the front seat passenger, was also searched and found to be in possession of ten ziplock bags of heroin.

Adell and another witness testified for the defense, giving a different version of what happened. Adell said that the officers did not ask whether they could pat him down for weapons and that he never made any move toward his pocket. He did admit, however, that the pocket was "bulging out."

The trial court credited the testimony of the two officers and specifically found that Adell had consented to a frisk for weapons. The court ruled that the traffic stop was proper and that Officer Schirmer had properly asked Adell to get out of the car. The court also accepted Officer Reynolds' testimony that "he was concerned for his safety, and that's why he reached inside of Mr. Adell's pockets." It held, however, citing *Terry v. Ohio*, 392 U.S. 1, 23–27, 88 S.Ct. 1868, 1881–1883, 20 L.Ed.2d 889 (1968), that he was not justified in removing the plastic bag from the pocket because he had not first felt it through the clothing while conducting a patdown. "[O]nly if the officer feels an object that may be a weapon, or that on a plain feel is contraband ... only then may the officer reach inside the clothing to re-

trieve it." The court therefore granted Adell's motion to suppress the cocaine.

## II

The government stoutly maintains that the trial court erred in ruling that, in the government's words, "Officer Reynolds was required to engage in the ritual of a patdown before proceeding further." It contends that under *Terry v. Ohio* and its progeny, the officer, apprehensive about his own safety, could reach directly into Adell's pocket and seize whatever he found there.[2] The government cites several cases, notably *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), in which such seizures were upheld without a preliminary patdown.[3] We need not decide the point raised by the government. Even if we assume, for the sake of argument, that the government is right, the cocaine must be suppressed for a different reason.

In *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the Supreme Court held invalid a seizure very similar to the one before us. A police officer, in the course of a *Terry* stop and patdown, felt a small lump in the pocket of Dickerson's jacket. By "squeezing, sliding, and otherwise manipulating" the lump with his fingers, *id.* at 377–378, 113 S.Ct. at 2138, the officer concluded that the lump was a rock of crack cocaine wrapped in cellophane. He then reached into Dickerson's pocket and retrieved a small plastic bag containing the rock. In due course Dickerson was charged with, and convicted of, possession of a controlled substance. The Supreme Court held that the officer's actions had gone beyond the permissible limits of a *Terry* frisk and hence that Dickerson's Fourth Amendment rights had been violated. Because the officer "made no claim that he suspected this object

---

**2.** The government bases its entire argument on *Terry v. Ohio*. It does not argue that Officer Reynolds had probable cause to seize the plastic bag, nor would the evidence have supported a finding of probable cause at the crucial moment, *i.e.*, while the officer's hand was still in Adell's pocket. The officer never articulated any suspicion that the bag might have contained cocaine or some other kind of contraband. Had he done so, or had the prosecutor asked him what he

thought the "rock-like substance" was when he felt it inside the bag, this might well be a very different case.

**3.** Similar cases from this court include *Moore v. United States*, 468 A.2d 1342, 1346 (D.C.1983); *Lyons v. United States*, 315 A.2d 561 (D.C.1974); and *Murphy v. United States*, 293 A.2d 849, 850–851 (D.C.1972).

to be a weapon," *id.*, his manipulation of the lump inside the plastic bag, which led to the conclusion that it was crack cocaine, was not authorized under *Terry*.

The facts of *Dickerson* are, in our view, materially indistinguishable from the facts of this case. Even assuming that Officer Reynolds was justified in reaching into Adell's pocket without a prior patdown, as the government contends, he was not entitled under *Terry v. Ohio* to remove the plastic bag from the pocket once he realized that it was not a weapon and did not contain a weapon. "[T]he officer's continued exploration of [Adell's] pocket after having concluded that it contained no weapon was unrelated to the sole justification of the search under *Terry:* the protection of the police officer and others nearby." *Dickerson,* 508 U.S. at 378, 113 S.Ct. at 2138–2139 (citation and internal punctuation omitted). The removal of the plastic bag from Adell's pocket was thus a violation of his Fourth Amendment rights.

The order from which this appeal is taken is accordingly

*Affirmed.*