Mark BALL, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 98–CF–787.

District of Columbia Court of Appeals.

Submitted June 8, 2000.

Decided July 25, 2002.

Sara E. Kopecki, Washington, DC, was on the brief for appellant.

Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher, Mary–Patrice Brown, Adam L. Rosman and Susan A. Nellor, Assistant United States Attorneys, were on the brief for appellee.

Before FARRELL, RUIZ and GLICKMAN, Associate Judges.

RUIZ, Associate Judge.

Mark Ball appeals from his conviction of unlawful possession with intent to distribute a controlled substance in violation of D.C.Code § 33–541(a)(1) (1993), on the ground that the trial court should have granted his motion to suppress physical evidence—drugs and $953 in cash—found during a search following his arrest. Ball pled guilty, reserving the right to appeal the denial of his motion to suppress evidence for lack of probable cause. We conclude that the officer's plain feel of a large medicine bottle, enhanced by the officer's observations of appellant's conduct and experience with the practice of drug traffickers, gave the officer probable cause to search, and affirm.

## FACTUAL SUMMARY

At the suppression hearing, the only witness was Officer Richard Harger, a three and one-half year veteran of the Metropolitan Police Department. He testified that at approximately one o'clock on the morning of November 12, 1997, he and his partner, Officer Howard Howland, were traveling north on North Capitol Street when Officer Howland observed an automobile, a Lincoln Continental, without a front license plate. The officers turned around to follow the Lincoln, and made a traffic stop after they observed that it had a homemade license plate made of cardboard in the rear window. Officer Harger approached the stopped car from the passenger side and, when the officer illuminated the back passenger area with his flashlight, he saw appellant seated in the back seat. Officer Harger then spoke with the front seat passenger, who claimed to be the owner of the vehicle. Although it was a cool night, the front seat passenger "started to perspire from his forehead" and was "starting to get excited"; the situation "start[ed] to get slightly more intense the longer [the officer] was standing there." The officer obtained the front-seat passenger's consent to search the automobile, and frisked him. As Officer Harger was frisking the front seat passenger, he observed appellant "start[ ] to move his left hand and he was trying to cover his abdomen area with a newspaper which was seated on the seat next to him," whereupon he had appellant exit the vehicle, concerned that he might have a gun or other weapon on his person. As he exited the vehicle, appellant "immediately put his hands in his jacket pocket." The jacket was "a sweatshirt type coat that had pockets on the front where you enter hands from the side." Officer Harger ordered appellant to remove his hands from the jacket pockets and place them on top of the vehicle. As appellant did so, he once again attempted to place his right hand in his right front jacket pocket, at which point the officer pushed him against the car and asked for his name and identification. Appellant responded that the identification was in his left rear pants pocket. As appellant reached for the identification with his left hand, "[a]t the same time he was trying to go to his right front jacket pocket" with his right hand for a third time. Officer Harger grabbed appellant's right hand and proceeded to perform a protective "frisk of his outer garment, particularly the right front pocket of his jacket."

As the officer frisked appellant, he "felt a large cylinder container which [he] thought to be a large medicine bottle," and immediately thought that "it was some kind of contraband or narcotics because [appellant] made several attempts to go into his pocket and remove it." Officer Harger removed the medicine bottle from appellant's pocket, opened it, and saw a large number of ziplock bags containing a white rock-like substance.[1] Appellant then snatched the bottle from Officer Harger's hand, threw it a short distance, striking the officer in the face with the throwing motion, and began to flee. Appellant was caught and arrested, and in a search following his arrest, $953 in cash was found on his person. The officer testified that he had been involved in more than one hundred drug-related arrests, that he is familiar with the ways that drugs are packaged and hidden, and that he has arrested numerous people who have hidden narcotics in medicine bottles.

The trial court credited Officer Harger's testimony and found that appellant's actions in calling attention to the front right

---

1. The medicine bottle was received into evidence at the suppression hearing.

pocket of his jacket provided a reasonable basis for the officers to believe that he may be armed and justified a protective frisk. The trial court further credited that the object in appellant's pocket was immediately apparent to Officer Harger as a medicine bottle and ruled that "the combination of feeling the bottle, knowing it was a bottle, the size of a bottle,[2] the experience of the officer with regard to the packaging of narcotics in this kind of container and the defendant's actions constituted probable cause and justified the search."

## ANALYSIS

Appellant contends that the police unlawfully seized the medicine bottle during the *Terry* frisk.[3] Specifically, he argues that Officer Harger's tactile detection of the closed medicine bottle, even when viewed in conjunction with other circumstances—such as the officer's narcotics experience and appellant's continued attempts to access the jacket pocket—failed to establish probable cause for the officer to believe that the bottle contained contraband.

When reviewing the denial of a motion to suppress, this court defers to the trial court's findings of fact, unless they are clearly erroneous or not supported by the record. *See Powell v. United States,* 649 A.2d 1082, 1084 (D.C.1994). All facts and reasonable inferences are to be viewed in the light most favorable to the government. *See Nixon v. United States,* 402 A.2d 816, 819 (D.C.1979). However, we independently review the trial court's legal conclusion on probable cause. *See Green v. United States,* 662 A.2d 1388, 1389 (D.C. 1995).

" '[P]robable cause is a flexible, common-sense standard' that 'does not demand any showing that [the officer's belief that he has witnessed criminal behavior] be correct or more likely true than false.' " *Coles v. United States,* 682 A.2d 167, 168 (D.C.1996) (quoting *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion)). "[T]he test for judging the existence of probable cause is whether a reasonably prudent police officer, considering the total circumstances confronting him and drawing from his experience, would be warranted in the belief that an offense has been or is being committed." *Peterkin v. United States,* 281 A.2d 567, 568 (D.C.1971) (internal quotation omitted). Thus, we are required to evaluate the reasonableness and strength of the inferences that could be drawn from the facts that confronted the officer who frisked appellant in this case.

### I. The "Plain Feel" Doctrine

The Supreme Court has recognized the existence of a "plain feel" exception to the Fourth Amendment's warrant requirement, analogous to the "plain view" exception, that permits warrantless seizures of obvious contraband discovered during the course of a lawfully conducted frisk or search. *See Minnesota v. Dickerson,* 508 U.S. 366, 374–76, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity *immediately apparent,* there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if

---

2. The trial court stated that "[t]his is not a small bottle that just contains a couple of pills, this is a fairly large bottle."

3. Ball does not appeal the trial court's ruling that the protective frisk was proper pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Id.* at 375–76, 113 S.Ct. 2130 (emphasis added). This court recognized the plain feel exception in *(Kenneth) Dickerson v. United States,* 677 A.2d 509 (D.C.1996). For a seizure of contraband under the "plain feel" exception to the warrant requirement, 1) the pat-down must be permissible under *Terry,* 2) the contraband must be detected in the course of the *Terry* search, and 3) the incriminating nature of the object perceived to be contraband must be immediately apparent to the officer. *See Minnesota v. Dickerson,* 508 U.S. at 375–76, 113 S.Ct. 2130; *State v. Bridges,* 963 S.W.2d 487, 494 (Tenn.1997). "Immediately apparent" for purposes of plain feel analysis does not mean that an officer must know for certain that the item felt is contraband, only that there is probable cause to associate the item with criminal activity. *See Texas v. Brown,* 460 U.S. at 741, 103 S.Ct. 1535 ("[T]he use of the phrase 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine."); *State v. Wonders,* 263 Kan. 582, 952 P.2d 1351, 1362 (1998) ("[T]he same construction of the 'immediately apparent' requirement in plain view situations should be applied to those involving plain feel."); *People v. Champion,* 452 Mich. 92, 549 N.W.2d 849, 855 (1996) (" '[I]mmediately apparent' means that without further search the officers have 'probable cause to believe' the items are seizable." (quoting *Texas v. Brown,* 460 U.S. at 741–42, 103 S.Ct. 1535)). Thus, as we noted in *(Kenneth) Dickerson,* "[A]n officer must possess probable cause that the item is contraband or evidence of a crime to seize the object lawfully." 677 A.2d at 513 n. 5. *See also Christmas v. United States,* 314 A.2d 473, 479 (D.C.1974) (finding seizure illegal absent probable cause to believe medicine vial contained contraband or endangered officer's safety at the time of the initial intrusion).

## II. "Plain Feel" of Innocent Objects

In *(Kenneth) Dickerson,* we explained that although the "contour or mass" of some items may make their identity as contraband immediately apparent, "[o]ther shapes, sizes, and weights, of course, are likely to be more ambiguous—consistent, for example, with drug packages but also with cigarette, candy, and other small packages." 677 A.2d at 512. We further noted that, absent probable cause, the officer's "touch" of the object cannot go beyond the bounds circumscribed under *Terry* and thus "cannot amount 'to the sort of evidentiary search that *Terry* expressly refused to authorize' ... such as 'squeezing, sliding, and otherwise manipulating the contents' of the suspect's clothing." *Id.* (quoting *Minnesota v. Dickerson,* 508 U.S. at 378, 113 S.Ct. 2130). We cautioned that "[t]rial courts must be careful to assure that a police officer's 'immediately apparent' recognition of a concealed drug package, for example, is not too casually claimed or accepted." *Id.* There is no claim here that Officer Harger exceeded the bounds of a frisk, and manipulated the medicine bottle before deciding that it likely contained contraband. The precise question before the court in this case is whether Officer Harger's tactile perception of the medicine bottle while patting the outer surface of appellant's jacket, combined with the attendant circumstances known to the officer at the time, provided probable cause for his belief that the bottle contained contraband before he reached into appellant's pocket to retrieve it.

We have not directly addressed this issue in the context of the plain feel doctrine. Other courts have split on whether, under the plain feel doctrine, an officer may seize a container that is not in itself contraband and does not conform to the shape of contraband (such as a medicine bottle or matchbook), yet is known to be routinely used to package or contain drugs. The difference between the approach of the courts which have found probable cause when considering the officer's tactile perception of an object that has both legitimate and illicit uses,[4] and

4. In *State v. Rushing*, 935 S.W.2d 30 (Mo. 1996), the Supreme Court of Missouri affirmed the seizure of cocaine found in a plastic medicine bottle pursuant to a pat-down search conducted after the defendant had been observed as a participant in what appeared to be a drug transaction in an area "known for drug trafficking and gang activity." *Id.* at 31. In Rushing's front pocket the officer felt what he immediately thought was a tubular plastic "Life Saver Hole candy container, which is a common container used by crack dealers to carry their crack cocaine in." *Id.* at 31. Noting that the "immediately apparent" requirement equates with the probable cause standard, the Missouri Supreme Court held there to be "sufficient evidence to support a finding of probable cause even though [the officer] felt the container rather than the cocaine itself." *Id.* at 33. Given the officer's training and experience, "[t]he distinctive character of the container itself revealed its probable contents to the trained officer." *Id.* A dissent in *Rushing* reasoned that "the effect of the majority opinion is to reduce the probable cause standard to one of reasonable suspicion." *Id.* at 34 (Covington, J., dissenting).

Likewise, in *People v. Champion*, 452 Mich. 92, 549 N.W.2d 849 (1996), the Michigan Supreme Court considered the "degree of certainty required that an object felt during a pat-down search is contraband before a police officer may remove that object from the person being searched," *id.* at 851, and concluded that "upon feeling the pill bottle, under a totality of the circumstances, the officer had probable cause to believe that the pill bottle contained contraband." *Id.* at 858. In concluding that the officer had probable cause to believe the pill bottle, which was felt in the suspect's groin area, contained drugs, the court specifically relied on the facts that 1) Champion had exited his vehicle and walked away on seeing the police, 2) one of the officers recognized Champion and was aware of his previous drug and weapons convictions, 3) the officers were in a high drug area, 4) Champion had his hands tucked inside the front of his sweatpants while walking away and refused to remove his hands when repeatedly asked to do so, and 5) the twenty-year veteran officer who performed the pat-down was aware that contraband is often carried in the type of pill bottle detected on the defendant's person. *See id.* at 859. The court could not "imagine that any reasonable person in [the officer's] position, given all of the above circumstances, could have concluded that [the defendant] was carrying prescription medication, or any other legitimate item, in the pill bottle in his groin region." *Id.* The court rejected the view that *"Dickerson* requires that the object felt be contraband rather than contain it," such a distinction only serving to "encourage better packing of illicit drugs." *Id.* at 856 n. 8. The court cautioned, however, that "if the pill bottle in Mr. Champion's possession had been found in his jacket pocket or if Mr. Champion had not had his hands inside his sweatpants and he had no pockets in which to carry a pill bottle, the result may have been different." *Id.* at 859. A vigorous dissent in *Champion* argued that "[t]here is nothing illegal about possessing [a pill bottle]," *id.* at 866 (Brickley, J., dissenting), and that in *Dickerson* the Supreme Court "allowed an object felt during the course of a lawful *Terry* search to be admitted into evidence only where *that particular object's* mass and contour make *its* incriminating character 'immediately apparent.' " *Id.* at 865–66 (emphasis in original).

In *State v. Traylor*, 723 So.2d 497 (La.Ct. App.1998), a Louisiana intermediate appellate court concluded that the seizure of a pill bottle found in the sock of a suspect was proper based on the totality of the circumstances, emphasizing that "[i]t was late at night on a campus where Traylor was not a student"; that "[d]espite orders to cease, Traylor persisted in reaching for his leg," thus "direct[ing] [the officer's] attention to this area of his clothing by his actions"; the officer found a Tylenol vial in which the officer "knew that crack dealers often hide drugs"; and that the bottle was hidden in the defen-

those which have concluded that the officer's touch of a legal item gives rise to

dant's sock, "an unusual place for one to store his pain reliever." *Id.* at 500.

*Accord State v. Stevens,* 672 So.2d 986, 988 (La.Ct.App.1996) ("[I]n the pocket of a drug-selling suspect flagging down cars at night in an area known for illegal drug trafficking, a small matchbox can be immediately recognized, by feel, for what it almost surely is, a depository for crack cocaine."). *See also State v. Lee,* 126 Ohio App.3d 147, 709 N.E.2d 1217, 1219–20 (1998) (contraband contained in pill bottle immediately apparent).

5. In *State v. Bridges,* 963 S.W.2d 487 (Tenn. 1997), the Supreme Court of Tennessee suppressed evidence seized when, during the course of a pat-down to ensure that Bridges was not carrying weapons, the officer felt in Bridges' right jacket pocket an object "in the shape of a pill bottle," which he recognized as "the kind that a lot of other crack dealers will use to keep their crack in." *Id.* at 489. The officer had received information from a reliable informant that Bridges was selling cocaine and carrying cash and drugs on his person, had received prior tips regarding Bridges' dealing crack cocaine in the same area, and was aware that Bridges previously had been convicted of felony assault and had recently been in an armed altercation with police. *See id.* The Tennessee Supreme Court reasoned that "it was not immediately apparent to [the officer] that the bottle contained contraband until it was removed from the defendant's pocket[,] . . . the very type of further manipulation forbidden by *Dickerson.*" *Id.* at 495. Although the officer immediately recognized the object as a pill bottle, the court stated that "unless he was clairvoyant, he could not have discerned the contents from merely touching the container. Such a bottle, or one resembling it by touch, may enclose legal medication, candy, pins, film or any number of other small items." *Id.* The court distinguished *Champion* by noting that noticeably lacking from the officer's testimony in *Bridges* was "the objective basis upon which he relied for identification of the container itself or its possible contents as contraband. The record contains little evidence of [the officer's] experience in drug cases and no evidence as to how he connected the container with the possession of cocaine." *Id.* A dissenting justice would have held that given the facts and circumstances of the search, the

only a reasonable suspicion that the item might contain contraband,[5] is that the lat-

officer had probable cause to believe the pill bottle contained contraband. *See id.* at 497 (Drowota, J., dissenting).

In *Commonwealth v. Stevenson,* 560 Pa. 345, 744 A.2d 1261 (2000), the Supreme Court of Pennsylvania held there was no probable cause in a case where a suspect "began to fidget and move [his] hands around inside the vehicle," and after he was ordered out of the car, "appeared very nervous, and continued to move his hands about and around his jacket." *Id.* at 1264. Based on these "nervous and suspicious movements," the trooper patted the suspect down, feeling "what appeared to be a cigarette or cigar and something similar to a pill bottle in the liner of [the suspect's] jacket." *Id.* Removing the items, the officer discovered that the pill bottle contained crack cocaine and the hollowed out cigar contained marijuana. *See id.* Despite the officer's testimony that "in his experience as a police officer, he had previously seen crack cocaine packaged within pill bottles," the court noted that "although [the officer] felt what he described as . . . a pill bottle during his frisk of [the suspect], he did not plainly feel, as *Dickerson* requires, objects that were immediately apparent to him *as contraband.*" *Id.* at 1265 (emphasis in original). Noting that "[t]here is no dispute that pill bottles and cigars are legal items with legal purposes," the court held that "the immediately apparent requirement of the plain feel doctrine is not met when an officer conducting a *Terry* frisk merely feels and recognizes by touch an object that could be used to hold either legal or illegal substances, even when the officer has previously seen others use that object to carry or ingest drugs." *Id.* at 1266. Analogizing to a plain view case, the court commented that if the suspect had been "walking down the street visibly displaying a pill bottle and a cigar, with nothing incriminating about the containers in sight, an officer would be unauthorized in seizing those items under the plain view exception to the warrant requirement." *Id.* at 1267 n. 4. Citing *Dickerson's* stricture on manipulating the object before the nature of the object is apparent, the court reasoned that "because the incriminating contents of the objects were detected only after [the officer] seized and inspected the cigar and pill bottle by sight, . . . the immediately apparent requirement of the plain feel doctrine has not been satisfied." *Id.* at 1267.

ter courts focus on the tactile perception of the felt object to the exclusion of other attendant circumstances which may inform the officer's belief of what he is touching. Although we have no case directly on point, our Fourth Amendment jurisprudence leads us to apply a contextual analysis in plain feel cases.

First, and most notably, in *(Kenneth) Dickerson* we recognized that the tactile perception of an object may be informed by the officer's training and experience and other attendant circumstances. *See* 677 A.2d at 512. Although that case did not involve an object that has innocent uses, it is instructive in that it analyzes the plain feel doctrine consistent with our plain view jurisprudence. We do the same here.

In *Christmas v. United States*, 314 A.2d 473 (D.C.1974), a plain view case, we considered whether the seizure of a prescription pill bottle and the examination of its contents, which the officer could not see, was reasonable. We held that the seizure was not justified under the plain view doctrine because the police "officer was without probable cause to believe that such contents were subject to seizure as contraband." *Id.* at 478. In *Christmas*, officers observed the passenger "bend over several times" reaching under the seat of the auto. *See id.* at 474. Observing this, the officers decided to "spot check" the car and pulled it over. *Id.* An officer picked up a plastic vial that was on the seat, noticing as he did so that the vial contained two pills and had a worn prescription label attached. *See id.* at 475. After each occupant denied ownership of the vial, the officer opened the bottle, removed the pills, and placed the occupants under arrest. *See id.* Holding that the officer did not have probable cause prior to seizing the pill bottle, the court thought it significant that the officer, unlike in the case at bar, "had no special training or experience in the 'area of narcotics,'" and there was no testimony of the officer's knowledge, based on experience, that "such medicine vials with prescription labels attached were used to transport narcotic drugs." *Id.* at 476–77. This comment implies that, had there been such testimony, *Christmas* may very well have upheld the seizure.[6]

The dissent in *Stevenson* faulted the majority for "fail[ing] to examine the totality of the circumstances and discount[ing] the [officer's] experience," *id.* at 1271, and instead announcing an interpretation of the "immediately apparent" requirement that "would require certainty on the part of the officer, requiring him to identify an item as contraband to the exclusion of any other possibility." *Id.* at 1272 (Castille, J., dissenting).

*Accord United States v. Ross*, 827 F.Supp. 711, 718 (S.D.Ala.1993) (matchbox in groin area not immediately apparent as contraband); *Jackson v. State*, 669 N.E.2d 744, 750 (Ind.Ct.App.1996) (suspicious movements and behavior leading to discovery of partially transparent prescription medicine bottle not sufficient to render its contents immediately apparent as contraband); *State v. Parker*, 622 So.2d 791, 795 (La.Ct.App.1993) ("A matchbox in and of itself is not contraband.... In order to determine if the matchbox held drugs, it was necessary for the officer to re-

move it from inside the defendant's pocket and open it. This is the type of further manipulation outlawed by *Dickerson*."). *See also Ex parte Warren*, 783 So.2d 86, 94 (Ala.2000) (plain feel of plastic candy container not sufficient to establish probable cause and opening the container was improper further manipulation); *Howard v. State*, 645 So.2d 156, 158–59 (Fla.Ct.App.1994) (plain feel alone of film canister does not establish probable cause and fact that officer shook the canister was improper further manipulation); *State v. Oborne*, 99 Ohio App.3d 577, 651 N.E.2d 453 (1994) (after determining film canister was not weapon, no probable cause that it contained contraband); *State v. Abrams*, 322 S.C. 286, 471 S.E.2d 716, 717–18 (App.1996) (per curiam) (medicine bottle wrapped in black tape not immediately apparent).

6. *Christmas* is also distinguishable in that the passenger's several movements which the officer had observed did not add to the probable

That additional evidence was presented in another plain view case, *Hicks v. United States,* 705 A.2d 636 (D.C.1997), where the court contrasted the lack of testimony regarding the officer's narcotics experience in *Christmas,* stating that the officer's testimony "that he had been assigned to vice for five years, that he was familiar with the area as one in which marijuana was sold and that he recognized the blunts as cigars used to smoke marijuana and the vanilla extract bottle as used to carry PCP … based on his own experience," sufficed to support the trial court's "factual finding that the officer recognized the objects as probable items of contraband." *Id.* at 641 n. 10.[7]

In *In re J.D.R.,* 637 A.2d 849 (D.C.1994), we concluded there was probable cause based on the officer's plain view observation of an item routinely used in drug trafficking, in that case a ziplock bag. In *J.D.R.,* officers pulled over a vehicle in the early morning hours which was driving without headlights in an area known for high drug trafficking. *See id.* at 850. J.D.R. sat in the front passenger seat, with a cast on his left arm. *See id.* The officer approaching the passenger side "noticed the corner of a small ziplock bag sticking out from inside [J.D.R.'s] cast." *Id.* When the officer shined his flashlight on J.D.R.'s hand, J.D.R. curled up his fingers so that the ziplock bag could not be seen. *See id.* Based on the officer's knowledge that ziplock bags are commonly used as containers for illicit drugs, the officer ordered J.D.R. to exit the vehicle and to open his hand. *See id.* When J.D.R. said he could not open his hand, the officer pried open

his fingers and again saw the corner of a ziplock bag. *See id.* The officer seized the bag, which was found to contain crack cocaine. *See id.* A further search of the cast yielded another ziplock bag containing crack cocaine. *See id.* We rejected J.D.R.'s argument that the officer "saw so little of the bag sticking out from under the cast that he could not reasonably have concluded that [J.D.R.] was in possession of any drugs." *Id.* Rather, we held that the officer "saw enough of the plastic object … to recognize it as a ziplock bag" and "[p]utting that fact together with his knowledge, based on personal experience, that such bags were commonly used as drug containers, the officer [reasonably] concluded that appellant was concealing an illicit drug inside his cast." *Id. See also United States v. Prandy–Binett,* 302 U.S.App.D.C. 1, 995 F.2d 1069 (1993) (probable cause to arrest upon officer's view of a rectangular package, bound in silver duct tape, that the suspect, who had made inconsistent responses to police questions, had described as a gift); *Price v. United States,* 429 A.2d 514 (D.C.1981) (probable cause based on officer's sighting of a small manila envelope which he recognized as a commonly used container for illicit drugs).

These cases, in which probable cause was found based on the officer's plain view, "recognizing distinctive packaging used in the drug trade for smaller quantities," coupled with "evidence 'describing the arresting officer's experience with the particular packaging,'" *J.D.R.,* 637 A.2d at 850 (quoting *Prandy–Binett,* 302 U.S.App.D.C. at 5, 995 F.2d at 1073), and other circumstances

---

cause determination because the bottle was seized from where it lay on the front seat and not from under the seat, where the passenger was seen reaching. Christmas' movements merely gave rise to the officers' suspicions that something was amiss and prompted their decision to stop the vehicle.

7. In *Hicks* the court did not order suppression of the seized items because the officer had no lawful basis for being in a position to see the items in plain view. 705 A.2d at 640.

suggesting criminal activity, persuade us to adopt a similar approach in plain feel situations.[8] This approach is consistent with the Supreme Court's reasoning in *Dickerson* that seizure under these circumstances does not increase "invasion of the suspect's privacy beyond that already authorized," for a limited search of the suspect's person. 508 U.S. at 375, 113 S.Ct. 2130. To require more certainty from the feel of the object alone would be to expect more from the "immediately apparent" requirement than the probable cause required by the Fourth Amendment. *See Texas v. Brown,* 460 U.S. at 743, 103 S.Ct. 1535 (plurality of the Supreme Court dismissed as "all but irrelevant" the officer's inability to see through the opaque fabric of a seized balloon believed to contain cocaine). The further intrusion into the suspect's possession is justified once the officer has probable cause to believe that it contains contraband. *See Horton v. California,* 496 U.S. 128, 141–42 & n. 11, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). We turn to apply these principles to the facts of the present case.

### III. "Immediately Apparent"/Probable Cause Determination

A medicine bottle is an object with obvious legitimate use for prescription medication or as a container for small objects, but which can also, to the mind of a trained officer, be put to illicit uses. *See (Bertrand) Dickerson v. United States,* 650 A.2d 680, 682 (D.C.1994) (pill bottle containing crack cocaine); *United States v. Bellamy,* 619 A.2d 515, 517 (D.C.1993) (illegal ammunition in pill bottle); *Offutt v. United States,* 534 A.2d 936, 937 (D.C. 1987) (plastic vitamin pill bottle containing tinfoils of marijuana-laced PCP). An officer's tactile identification of a pill bottle, standing alone, does not give rise to probable cause to seize the bottle or open it to reveal its contents. *See Christmas,* 314 A.2d at 479 ("Standing alone, the plain view of a simply suspicious-looking or unusual object which itself is not contraband, does not justify its seizure without a warrant." (quoting *Thomas v. Superior Court,* 22 Cal.App.3d 972, 99 Cal.Rptr. 647, 650 (1972)) (internal quotation omitted)); *cf. Speight v. United States,* 671 A.2d 442, 449 (D.C.1996) (officer "had no reason to believe the keys he felt in [appellant's] pocket were contraband or a weapon"). As we expressly noted in *(Kenneth) Dickerson,* it is only when an officer is presented with an "ambiguous object" that an "officer's training and experience, including knowledge that the environment where the pat down takes place is a high crime area, can inform the officer's perception." 677 A.2d at 512. Likewise, when presented with a

---

8. *United States v. Adell,* 676 A.2d 446 (D.C. 1996), is not to the contrary. In *Adell,* officers pulled over the appellant because the car he was driving lacked a front license plate and inspection sticker. *See id.* As the officers were about to start a consensual frisk, Adell attempted to reach into his front left pocket. *See id.* After being ordered to place both hands on his car, Adell again reached for the same pocket, whereupon the officer pulled Adell's hand out of the pocket and stuck his own hand into Adell's pocket to see what it contained. *See id.* at 446–47. Feeling a plastic bag which *contained a rock-like substance,* the officer removed the bag and with further manipulation of its contents found it to contain cocaine. *See id.* at 447. Relying on the Supreme Court's *Dickerson* decision and *Terry,* we held that once the officer "realized that [the plastic bag] was not a weapon and did not contain a weapon," the continued exploration of the pocket constituted an illegal search and seizure. *See id.* at 448. *Adell* is not instructive in the present case because, as we noted in *(Kenneth) Dickerson,* "[i]n *Adell,* the government did not argue that the officer had probable cause to seize the plastic bag, nor did the officer articulate any suspicion that the bag contained contraband, much less show ... immediate recognition" of the bag's contents. 677 A.2d at 514 n. 10.

readily recognizable object that has innocent as well as illicit uses, such as the medicine bottle in this case, the officer's training and experience and other attendant circumstances can similarly inform his or her perception. *See Christmas*, 314 A.2d at 477 n. 8. ("In determining the existence of probable cause in warrantless search and seizure cases, the expertise of the officer in narcotics is generally regarded as an important consideration.") Officer Harger testified, and the trial court credited, that he had been involved in numerous narcotics arrests and was familiar with the packaging of narcotics in this type of container, having "arrested numerous people who have hidden narcotics in medicine bottles." *See In re J.D.R.*, 637 A.2d at 850 (plain view of tip of ziplock bag "together with [the officer's] knowledge, based on personal experience, that such bags were commonly used as drug containers" supports probable cause).

Although there was no evidence presented that the traffic stop and subsequent pat-down of appellant took place in a high crime area, as is often the situation in the cases cited, more than the mere tactile identification of a pill bottle informed Officer Harger's probable cause determination. "Although a 'furtive gesture' is not sufficient standing alone to provide probable cause to believe a crime is being or has just been committed," *Price*, 429 A.2d at 517, appellant's actions were significant as they related to the medicine bottle in his jacket pocket. First, appellant moved a newspaper to cover his abdomen as if attempting to conceal something. On observing this action the officer asked appellant to exit the vehicle to better control the situation, whereupon he immediately put his hands in his jacket pockets as he stepped out of the vehicle. After complying with the officer's order to remove his hands from the pockets and place them on the vehicle, appellant then tried to place his right hand in his right front pocket and was told again to keep his hands out of his pockets. Nevertheless, appellant once again tried to reach into his right front pocket. This conduct was not only simultaneous with appellant's encounter with the police, but on two occasions was in derogation of the officer's specific orders to keep his hand out of the pocket. As the trial court noted, "the officers fe[lt] this medicine bottle in exactly the place that the defendant kept going to so that was— there was extra suspicions that they reasonably held that there could be contraband or something in that pocket based on the defendant's actions." *See Price*, 429 A.2d at 517 (as a result of appellant's movements, the officer "was reasonably justified in suspecting that appellant was attempting to conceal contraband or the instrumentality of a crime" (quoting *McGee v. United States*, 270 A.2d 348 (D.C.1970))).

We recognize that there are fewer circumstances attendant to the officer's tactile identification of the medicine bottle in this case than in some of the cited cases which concluded there was probable cause. Those cases generally have had multiple attendant facts in addition to the tactile identification of an object that is not contraband and the officer's knowledge that the object might be used to transport and conceal contraband. *See, e.g., Rushing*, 935 S.W.2d at 31–32 (prior observation of appellant in illicit activity, high crime area, and officer's experience); *Champion*, 549 N.W.2d at 859 (object being detected in an unusual location, officer recognized appellant and aware of prior drug convictions, high drug area, appellant's attempt to evade police, and officer's experience). Such attendant facts are necessary to meet the caution we expressed in *(Kenneth) Dickerson* that "[t]rial courts must be careful to assure that a police officer's

'immediately apparent' recognition of a concealed drug package ... is not too casually claimed or accepted," 677 A.2d at 512, as the plain feel of objects legitimate in themselves traverses a fine line between reasonable suspicion and probable cause.

Nevertheless, although neither the officer's recognition of the object in appellant's pocket as a medicine bottle that could be used to conceal drugs nor appellant's conduct independently establish probable cause in this case, the combination of the officer's plain feel of the medicine bottle, the fact that the bottle was a large plastic container, the officer's experience with the packaging of narcotics in this kind of container and, most important, the defendant's numerous attempts to access the pocket where the medicine bottle was detected despite the officer's multiple orders to the contrary, *cf. Christmas, supra* note 6, satisfy us that the officer could reasonably infer that the medicine bottle contained contraband and was thus authorized to seize the medicine bottle from appellant's jacket pursuant to the "plain feel" exception to the warrant requirement. It is particularly telling that, even after appellant was being frisked by the officer, he continued to reach for the medicine bottle in his jacket pocket. Although probable cause imposes a stricter requirement than reasonable suspicion, it is not so demanding a standard as to have required more than became available to the officer as he frisked appellant. Viewed against the officer's experience, appellant's conduct added enough information to cross the threshold from reasonable suspicion that appellant might have a weapon in his jacket pocket to probable cause that he had drugs in the medicine bottle felt in the pocket.

▮ We reject the argument that it was improper for the officer to open the medicine bottle after removing it from appellant's pocket. As the officer had prob-able cause to believe that the medicine bottle contained contraband before he removed the bottle from appellant's jacket, it follows that—in the absence of additional information gained after he retrieved the bottle to dissuade him from that belief—he had probable cause to arrest based on the belief that appellant possessed drugs, perhaps (from the size of the container) with the intent to distribute. That probable cause also justified the officer in opening the container as a search incident to a valid arrest. *See Horton*, 496 U.S. at 141 & n. 11, 110 S.Ct. 2301 (explaining that reliance on privacy concerns is misplaced when an exception to the search warrant requirement authorizes an officer with a lawful right of access to seize an item without a warrant, even if the item is a container); *New York v. Belton*, 453 U.S. 454, 460–61, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (the "search incident to lawful arrest" exception to the warrant requirement justifies the infringement of any privacy interest the arrestee may have in a container found within the scope of the search authorized by the exception, even if the container is closed); *Rawlings v. Kentucky*, 448 U.S. ·98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (once probable cause to arrest is established, it is not "particularly important that the search preceded the arrest rather than vice versa" if the arrest followed "quickly on the heels of the challenged search"); *cf. Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998) (where officer chose not to arrest, but instead issued a citation for a traffic violation, there was no officer safety justification for search incident to arrest, nor was there concern about securing evidence of crime).

*Affirmed.*