Justin M. CORWIN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A04–1005–CR–296.

Court of Appeals of Indiana.

Dec. 16, 2011.

Andrew C. Searle, Tippecanoe County Public Defender, Lafayette, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Wade James Hornbacher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Justin Corwin brings this interlocutory appeal challenging the denial of his motion to suppress evidence. A police officer discovered, during a *Terry*[1] stop, prescription medication for which Corwin did not have a valid prescription. Corwin raises the following two issues:

1. Whether the Fourth Amendment was violated when the officer continued to search Corwin after discovering Corwin was not the suspect for whom he was looking; and

2. Whether the Fourth Amendment was violated when the officer continued inspecting the pill bottle from Corwin's pocket when it was apparent that bottle was not a weapon.

We reverse.[2]

## FACTS AND PROCEDURAL HISTORY

On June 25, 2009, Officer Kevin Flynn of the West Lafayette Police Department's Narcotics Unit received information that Kyle Balser, a man for whom police had an active arrest warrant, was staying at an apartment in a building located at 3007 Fall Court. Officer Flynn received a general description of Balser, but did not have a photo of him. Officer Flynn could have obtained a photo from the computer in his car, but he was afraid Balser would escape if he took the five minutes necessary to obtain the photo.

As Officer Flynn walked toward the 3007 building, he saw Corwin exit the main entrance carrying a plastic laundry basket. Corwin set the laundry basket on the ground and paced on the sidewalk. From fifty yards away, Officer Flynn believed Corwin fit Balser's general description and decided to investigate. As Officer Flynn approached, a van pulled up, and Corwin climbed into the back seat of the van without his laundry basket. Officer Flynn approached the driver's side of the van and talked to the driver. Officer Flynn noted a passenger in the front seat and then turned his attention to Corwin, who was sitting in the back seat.

Officer Flynn asked Corwin for his name, but he did not respond; rather, Corwin put his hands in his pockets. Officer Flynn asked Corwin to exit the van,

---

1. A police officer may briefly detain an individual for investigatory purposes without a warrant if, based on specific and articulable facts, the officer has reasonable suspicion that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

2. We heard oral argument at Taylor University in Upland, Indiana. We commend counsel for the quality of their advocacy, and we thank the faculty and students for their hospitality.

but he did not comply. Corwin ignored Officer Flynn's second request for his name and a second request that he step out of the van. Eventually Corwin exited the van, walked to the sidewalk, and sat down.

Because Corwin had put his hands in his pockets, Officer Flynn was concerned he had a weapon, and he ordered Corwin stand for a pat-down search for weapons. When Corwin stood, Officer Flynn noticed his clothes smelled of burnt marijuana. Officer Flynn found a folding knife in Corwin's pocket, then found a wallet, which he opened. The identification indicated the man was not Balser, but was Corwin. After finding the knife and wallet, Officer Flynn handcuffed Corwin and continued his pat-down search for weapons.

In the left-front pocket of Corwin's pants, Officer Flynn felt a circular object that he thought might be a weapon. Officer Flynn asked Corwin what the object was, but Corwin did not respond. Officer Flynn pulled the object out of Corwin's pocket, saw it was a prescription bottle, and then opened the bottle and saw twenty-one small white pills. The prescription bottle was missing the part of the tag containing the name of the person who received the prescription, but the remaining portion of the tag indicated the bottle contained a generic form of Xanax, which Officer Flynn knew to be a controlled substance.

Officer Flynn arrested Corwin, and the State charged him with Class C felony possession of a controlled substance.[3] Corwin moved to suppress the pill bottle and its contents. The court denied Corwin's motion, saying:

> An officer's authority to conduct a pat down search is dependent upon the nature and extent of his particular concern

for his safety. Here, the officer was justified in conducting the initial search of the Defendant for his own safety and the subsequent pat down search where, among other factors, the Defendant kept his hands in his pockets and refused to provide Flynn his name when asked and that a weapon had already been found in the Defendant's front pocket, and that the Defendant had an odor associated with marijuana. In the situation presented here, the officer's search of the Defendant and subsequent seizure of the pill bottle and drugs was valid.

(App. at 46–47.) The court certified that order for interlocutory appeal, and we accepted jurisdiction.

## DISCUSSION AND DECISION

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. When a defendant alleges evidence was gathered illegally, the State bears the burden of proving the evidence was admissible. *See Edwards v. State*, 759 N.E.2d 626, 630 (Ind.2001).

A police officer may stop a person to investigate possible criminal behavior without the probable cause required for a search warrant if the officer has "a reasonable and articulable suspicion that the person has been, is, or is about to break the law." *Wells v. State*, 772 N.E.2d 487, 489 (Ind.Ct.App.2002). "Reasonable suspicion entails some minimal level of objective justification for making a stop, something more than unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause." *Scott v. State*, 855 N.E.2d 1068, 1072 (Ind.Ct.App. 2006). When evaluating whether an officer had reasonable suspicion, we consider the totality of the circumstances. *Lamp-*

---

**3.** Ind.Code § 35–48–4–7.

*kins v. State,* 682 N.E.2d 1268, 1271 (Ind. 1997), *modified on other grounds on reh'g* 685 N.E.2d 698 (Ind.1997). If the facts known by the police at the time of the investigatory stop are such that a person of reasonable caution would believe the action taken was appropriate, the command of the Fourth Amendment is satisfied. *Id.* When we evaluate a determination of reasonable suspicion, we accept the trial court's factual findings unless they are clearly erroneous. *Myers v. State,* 839 N.E.2d 1146, 1150 (Ind.2005). The ultimate determination of reasonable suspicion, however, is a matter of law we review *de novo. Id.*

While conducting an investigatory stop, *Terry* permits an officer "to conduct a limited search of the individual's outer clothing for weapons if the officer reasonably believes the individual is armed and dangerous." *Howard v. State,* 862 N.E.2d 1208, 1210 (Ind.Ct.App.2007). The patdown is "strictly" for weapons and cannot be used as a means to detain a citizen at a *Terry* Stop "for a longer period than is required to resolve the suspicion" of criminal activity. *State v. Hobbs,* 933 N.E.2d 1281, 1286 (Ind.2010).

Corwin acknowledges the Fourth Amendment permitted Officer Flynn to stop him briefly to determine whether he was the man for whom police had an active arrest warrant. Corwin also concedes his behavior justified a pat-down search for weapons. Corwin argues, however, that Officer Flynn's search should have ended before the officer discovered the prescription drugs.

### 1. *When the Wallet Identified Corwin*

■ Corwin first asserts Officer Flynn no longer had a legitimate reason to continue his frisk for weapons after finding his wallet and learning he was not Balser. The trial court found four circumstances justified Officer Flynn's continued frisk: Corwin put his hands in his pockets, he had a folding knife in his pocket, he smelled of burnt marijuana,[4] and he had refused to provide his name. Although Corwin was not Balser, based on the totality of the circumstances, including those found by the trial court, we believe a reasonably prudent person in Officer Flynn's situation would want to know, for the safety of himself and others in the area, that Corwin did not have any weapons that might create a dangerous situation as police continued their search for Balser. *See, e.g., Terry,* 392 U.S. at 27, 88 S.Ct. 1868 ("The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."). Thus, we decline to hold Officer Flynn's continued search of Corwin after finding his wallet violated the permissible scope of a frisk for weapons under *Terry.*

---

**4.** Corwin asserts "no court decision in Indiana has held that smelling the odor of burnt marijuana in a subject's clothes provides reasonable suspicion for an investigatory stop of the subject." (Appellant's Br. at 10.) While we do not agree with his assessment of our precedent, *see, e.g., State v. Hawkins,* 766 N.E.2d 749, 752 (Ind.Ct.App.2002) (smell of burnt marijuana emanating from car creates probable cause to search the vehicle), *trans. denied,* and *Shinault v. State,* 668 N.E.2d 274, 278 n. 5 (Ind.Ct.App.1996) (when officer smelled "strong odor of marijuana coming from Shinault's person, there is also the possibility that probable cause then arose to justify an arrest and full search incident thereto"), we need not decide whether the smell of burnt marijuana on clothing, standing alone, could justify a continued frisk for weapons under *Terry,* because the circumstances facing Officer Flynn encompassed additional facts. *See Lampkins,* 682 N.E.2d at 1271 (reasonable suspicion determined based on totality of circumstances).

## 2. When the Bottle Was Not a Weapon

■■■ Corwin also argues Officer Flynn's actions, after discovering the round object was a pill bottle, exceeded the proper scope of a frisk for weapons under *Terry*. During such a frisk, if an officer "finds something that feels like a weapon, he can reach inside the clothing and check to see if it is a weapon." *Shinault*, 668 N.E.2d at 278 (officer properly removed bag of marijuana from defendant's pocket during *Terry* frisk because officer had not been able to "immediately eliminate the possibility that the tightly rolled plastic bag ... was not some sort of dangerous weapon").

If an officer "feels an object whose contour or mass makes its identity immediately apparent" as non-threatening contraband, the warrantless seizure of that contraband "would be justified by the same practical considerations that inhere in the plain view context." *See Parker v. State*, 697 N.E.2d 1265, 1267–8 (Ind.Ct. App.1998) (emphasis omitted) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375–76, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)). However, the object's identity as contraband must be "immediately apparent or instantaneously ascertainable. Merely suspecting the nature of an object is insufficient." *Id.* at 1268. *See also Barfield v. State*, 776 N.E.2d 404, 407 (Ind.Ct.App.2002) (removal of cigarette box from defendant's pocket exceeded *Terry* frisk when testimony did not support finding the officer immediately believed the item was contraband or a weapon).

■■■ Finally, *Terry* "does not, without more, authorize the examination of the contents of the items carried by the suspicious person." *Fentress v. State*, 863 N.E.2d 420, 423 (Ind.Ct.App.2007) (emphasis omitted) (quoting *Granados v. State*, 749 N.E.2d 1210, 1214 (Ind.Ct.App.2001),

*trans. denied* ). Thus, for example, *Terry* does not permit a police officer to unroll a dollar bill removed from a defendant's sock, *Granados*, 749 N.E.2d at 1214, or to unwrap a foil ball removed from a defendant's pocket. *Fentress*, 863 N.E.2d at 423. Neither does *Terry* justify a search inside a closed pill bottle, *Harris v. State*, 878 N.E.2d 534, 539 (Ind.Ct.App.2007), *trans. denied*, or looking to see what is inside a cigarette box, *Barfield*, 776 N.E.2d at 407 (searching inside of cigarette box violated *Terry* frisk for weapons because officer had not testified he believed the box might contain a weapon).

Officer Flynn testified he was concerned the round object might be a weapon. He asked Corwin what the object was, but Corwin did not explain. Therefore, the totality of the circumstances permitted Officer Flynn to take the bottle from Corwin's pocket to confirm it was not a weapon. *See Shinault*, 668 N.E.2d at 278 (holding officer properly removed bag of marijuana from Shinault's pocket during *Terry* frisk because officer had not been able to "eliminate the possibility that the tightly rolled plastic bag ... was not some sort of dangerous weapon").

However, Corwin argues Officer Flynn should have stopped his inspection of the bottle as soon as he determined it was not a weapon: if Officer Flynn had properly stopped his inspection he would not have seen pills, the altered label, or the drug name. At the hearing on the motion to suppress, Officer Flynn testified:

A That's when I retrieved that item and discovered it was a pill bottle.

Q Can you describe this pill bottle for the Court?

A It was a typical pill bottle from a drug store, from a pharmacy.

Q Did it have typical information on it? Person's name? What the, what the drug is?

A No, it did not have the person's name. It had been- - -that portion of the label had been torn off.

Q All right. And what did you do when you got the pill bottle?

A I then opened the pill bottle.

Q And what, if anything, did you see inside?

A I saw, I believe it was twenty one small white pills inside the bottle.

(App. at 24.)

█ Officer Flynn's testimony indicates the label on the prescription bottle was altered, but does not make clear whether he noted that alteration before or after he opened the bottle. Rather, Officer Flynn's testimony suggests he opened the pill bottle as soon as he pulled it from Corwin's pocket. That is impermissible during a *Terry* frisk for weapons. *See, e.g., Barfield,* 776 N.E.2d at 407 (searching inside of cigarette box violated *Terry* frisk for weapons because officer had not testified he believed the box might contain a weapon).

█ In response, the State asserts the bottle's "illicit nature was immediately apparent" upon removal from Corwin's pocket, (Br. of Appellee at 3), such that Officer Flynn had probable cause to arrest Corwin. Therefore, it argues, the officer opened the bottle pursuant to a constitutional search incident to arrest. This is a question of first impression in Indiana, and the State invites us to adopt reasoning from other jurisdictions. (*See id.* at 9) (citing *People v. Champion,* 452 Mich. 92, 549 N.W.2d 849, 860–61 (1996), *cert. denied* 519 U.S. 1081, 117 S.Ct. 747, 136 L.Ed.2d 685 (1997), and *Ball v. United States,* 803 A.2d 971, 982 (D.C.2002)).

In *Champion,* the opening of Champion's pill bottle was permissible as part of a search incident to his arrest, even though the arrest had not yet occurred. 549 N.W.2d at 861. Based on the totality of the circumstances, the Court reasoned the search was incident to Champion's arrest because the officer had probable cause to arrest Champion prior to opening the pill bottle based on

> [Champion's] furtive behavior after seeing the marked patrol car, [his] refusal to remove his hands from his sweatpants, the officer's recognition of [Champion] from [Champion]'s past involvement in drug crimes, the finding of the pill bottle in [Champion]'s groin region, and the officer's knowledge that illicit substances were frequently carried .in such a manner.

*Id.*

In *Ball,* an officer was permitted to open a prescription bottle found as part of a *Terry* frisk because additional circumstances gave rise to the probable cause needed to arrest Ball. 803 A.2d at 982. These additional circumstances included:

> [Ball] moved a newspaper to cover his abdomen as if attempting to conceal something. On observing this action the officer asked appellant to exit the vehicle to better control the situation, whereupon he immediately put his hands in his jacket pockets as he stepped out of the vehicle. After complying with the officer's order to remove his hands from the pockets and place them on the vehicle, appellant then tried to place his right hand in his right front pocket and was told again to keep his hands out of his pockets. Nevertheless, appellant once again tried to reach into his right front pocket. This conduct was not only simultaneous with appellant's encounter with the police, but on two occasions was in derogation of the offi-

cer's specific orders to keep his hand out of the pocket.

*Id.* at 981.

There are no such additional circumstances in the case before us. No evidence suggests Officer Flynn recognized Corwin from Corwin's past involvement in drug crimes or that the officer knew or suspected Corwin was involved with prescription drugs. Corwin had not continually disregarded Officer Flynn's commands after he initiated the *Terry* search. The bottle was in Corwin's pocket, not his groin. Nothing suggests Officer Flynn had prior knowledge or training based on which he could determine, prior to opening the bottle and inspecting the label, that the pill bottle contained an illegally-possessed controlled substance. Therefore, we decline the State's invitation to hold the facts and circumstances in this case, as known to Officer Flynn immediately upon pulling the bottle from Corwin's pocket, created probable cause to arrest Corwin for a drug crime. Thus, we cannot hold Officer Flynn's opening of the bottle was permissible as a search incident to arrest.

The State also attempts to distinguish *Harris*, 878 N.E.2d 534, where we held a warrantless search inside a blue plastic pill bottle exceeded the scope permitted by *Terry*. In *Harris*, the officer could not immediately identify the contents of the bottle as contraband. Rather, to develop a belief that the bottle contained contraband the officer had to shine a light from his flashlight thru the bottle to see that it contained a plastic bag. The State asserts the bottle Corwin possessed had an altered label that indicated the bottle contained a controlled substance but did not indicate to whom the substance was prescribed.

This, it argues, informed Officer Flynn that the bottle contained contraband. The altered label might create reasonable suspicion to further investigate the identity of the true owner of the bottle. But the State has not demonstrated the altered label created probable cause to arrest Corwin for illegal possession of a controlled substance *before* Officer Flynn opened the bottle to see the pills.

When the officer opened Corwin's pill bottle to determine the contents, he ran afoul of the limits of a *Terry* stop, and therefore the pills found in the bottle, and all evidence of their discovery, should have been suppressed. Accordingly, we reverse.

Reversed.

RILEY, J., and MATHIAS, J., concur.